# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

Clara LEE,                                  :
       Plaintiff,                      :
                           :          Case No: 3:02cv819 (PCD)
  vs.                                     :
                              :
HARTFORD PUBLIC SCHOOLS,                     :
and ANTHONY AMATO                            :
       Defendants.                     :

## RULING ON MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Plaintiff's employment related claims. For the reasons stated herein, Defendants' Motion [Doc. No. 32] is **granted in part**.

## I. BACKGROUND:

    A.      Procedural Background:

Plaintiff originally filed the present action against the City of Hartford/Hartford Public Schools and Anthony Amato, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq (Count One); the First and Fourteenth Amendments, U.S. Const., asserted under 42 U.S.C. § 1983 (Count Two); and breach of contract under Connecticut law during the course of her employment with Defendants (Count Three). Defendants moved to dismiss [Doc. No. 11] Plaintiff's Complaint. The Motion was granted in part and the City of Hartford was dismissed as a Defendant and Count One was dismissed as to Defendant Amato. Defendants now moves for summary judgment [Doc. 32] on the remaining Counts.

1

B.    Factual Background:[1]

Plaintiff has been a teacher and high school administrator in the Hartford Public Schools ("HPS") since 1967.  She is currently employed in the Hartford schools as an Assistant Principal at Quirk Middle School.  Plaintiff is over the age of 40.

Defendant Amato was Superintendent of Schools in Hartford from approximately April 1999 through October 2002.

From 1994 through August of 1999, Plaintiff served as the Executive Vice Principal of Weaver High School ("Weaver").  As an administrator in the Hartford school system, Plaintiff was a member of the Hartford Principals and Supervisors' Association, Local No. 22, AFSA, AFL-CIO ("HPSA").  HPSA was the exclusive bargaining agent for all certified administrators employed in the Hartford school system.

Early in the 1997-98 school year, for approximately two months, Plaintiff served as the acting principal of Weaver.  Plaintiff applied for the permanent position of Principal of Weaver, but Dr. Christine Mahoney was chosen for the position.  Plaintiff alleges that she only applied for the position at the urging of the administration.  Plaintiff then returned to her position of Executive Vice Principal under Mahoney.

During the 1998-99 school year, Plaintiff's performance was evaluated by Mahoney on three occasions.  On or about December 10, 1998, Plaintiff's performance was evaluated as needing improvement.  On or about May 3, 1999, Plaintiff's overall performance was evaluated as unsatisfactory.  Finally, on or about June 9, 1999, Plaintiff's performance was evaluated as

---

[1]    What follows is an abbreviated statement of the facts as a detailed account is unnecessary for the purposes of this Ruling.  All facts are taken from the parties' Local Rule 56(a) Statements.  Unless noted otherwise, the facts are undisputed.

2

unsatisfactory.  Prior to Mahoney's arrival, Plaintiff's performance was always rated as satisfactory or better.  Plaintiff argues that Mahoney's evaluations were based on fabricated performance defects and the magnification of otherwise minor defects.

Plaintiff alleges that throughout the 1998-99 school year, as well as 1997-98, Mahoney harassed and discriminated against her.  Among other things, she alleges that Mahoney created obstacles to her successful fulfilment of her duties by assigning her duties not typically part of her position, such as managing one of the "houses" of the student body.[2]  Plaintiff alleges that she was denied adequate secretarial support and was forced to assume duties that would otherwise be reserved for a secretary which impeded her ability to effectively perform her usual duties.  Plaintiff also argues the Mahoney outright lied about numerous other performance deficiencies.

Plaintiff filed a grievance in response to the evaluations in May 1999.[3]  Defendant Amato denies knowledge of the grievance.  Plaintiff claims that her representative, Neil Macy, brought the grievance to the attention of Robert Stacy, Executive Director of Human Resources.  Stacy recalls bringing the grievance to the attention of Defendant Amato, but told him that it had been investigated and was without merit.  On or about August 25, 1999, Ann-Marie DeGraffenreidt, Labor Relations Coordinator, sent Plaintiff a letter indicating that, after investigation, her complaints of age discrimination were found to be unfounded.  Plaintiff alleges that this

---

[2]     The student body was divided into four houses, over which the Vice Principals had responsibility. According to Plaintiff, the Executive Vice Principal was not usually assigned responsibility for the houses.  Pl. Local R. 56(a)(2) Statement, Part B, 3d.

[3]     This is the first grievance that Defendants acknowledge.  Plaintiff contends that she filed her first grievance in the 1997-98 school year based on a negative evaluation given at the end of the school year.  Pl. Local R. 56(a)(2), Part B, 2f.  This grievance, Plaintiff alleges, was ultimately removed from her permanent record as a result of procedural improprieties.  Id. at 2g.  Plaintiff then alleges that she filed another grievance in February 1999 asserting age discrimination and harassment.  Id. at 4c.  Plaintiff contends that this grievance was never fully investigated.  Id. at 4e.  Plaintiff then contends that she renewed this grievance in May 1999.  Id. at 5d.

grievance was never properly investigated.

On or about August 30, 1999, Plaintiff recalls a meeting, allegedly lasting 10-15 minutes, at which Defendant Amato was present. During this meeting, Plaintiff alleges that she made statements that her relationship with Mahoney needed to change. Defendant Amato purportedly cut her off and directed her to speak with Stacy.

Plaintiff and Macy then met with Stacy and Plaintiff was offered a position at Quirk Middle School. Defendants assert that this transfer was voluntary and based on Plaintiff's negative performance evaluations. Defendant Amato alleges that it is his policy to allow employees with negative evaluations the option of a transfer. Plaintiff sent Defendants a letter accepting the transfer, which Defendants characterize as a voluntary acceptance. Plaintiff characterizes the transfer as a demotion and that it was not at all voluntary or that it could have been understood that way. Plaintiff was then assigned to Quirk Middles School as a Vice Principal. In her new position, Plaintiff's salary remained unchanged until the salary equaled or exceeded her then current salary or until she accepted a new position.

In 1999-2000, Hartford Public High School ("HPHS") was on the verge of losing its accreditation by the New England Association of Schools and Colleges ("NEASC"). Defendants allege that NEASC felt that HPHS had a difficult staff and was not pleased with the leadership.

In April of 2000, an opening for the position of Executive Vice Principal at HPHS was posted and Plaintiff filed an application. Plaintiff was not interviewed for the position. Defendant Amato selected Jose Colon-Rivas as Principal of HPHS. Defendant Amato alleges that Colon-Rivas was given "carte blanche" to ensure the school was accredited. Plaintiff alleges that she had a contract with Defendant HPS that established procedures for the filling of this

4

position which were violated when HPS hired Colon-Rivas and failed to interview her.

## II. STANDARD OF REVIEW:

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'"  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 06 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Legg v. Dellavolpe, 228 F. Supp. 2d 51, 56 (D. Conn. 2002), citing Celotex, 477 U.S. at 322.  In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Summary judgment is proper when reasonable minds could not differ as to the import of evidence.  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Conclusory allegations will not suffice to create a genuine issue." Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).  Determinations of the weight to accord evidence or credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury.  Hayes v. N.Y. City Dep't of Corr., 84

F.3d 614, 619 (2d Cir. 1996).

**III. DISCUSSION:**

      A.     Whether Hartford Public Schools is a Proper Defendant:

Defendants' first argument is that because the City of Hartford has already been dismissed as an improper defendant, see Ruling on Motion to Dismiss [Doc. No. 21], the "law of the case" is controlling and Hartford Public Schools should also be dismissed as a Defendant. Def. Mem. Supp. Summ. J. at 6-7. It is difficult to understand the basis for Defendants' argument here. The doctrine of the law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988), citing Messenger v. Anderson, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912) (Holmes, J.). The issue of whether Hartford Public Schools is a proper Defendant was never explicitly raised or discussed in the Ruling on Defendants' Motion to Dismiss [Doc. No. 21], thus there is no law of the case on the issue. Accordingly, Defendants' argument is rejected.

Defendants next argue that the same reasoning applies to Hartford Public Schools as the City of Hartford. Def. Mem. Supp. Summ. J. at 7-9. Defendants' argument is flawed for the very reason that the authority they cite for the proposition that the City and the school district are the same, see Conn. Gen. Stat. § 10-240 ("[e]ach town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and shall have all the powers and duties of school districts...") no longer applies to the Hartford Public Schools. As discussed in the Ruling on Motion to Dismiss [Doc. No. 21], Connecticut Special Act No. 97-4 dissolved the Hartford Board of Education, establishing the State Board of

Trustees, thereby relieving the City of Hartford, as identified with the school district, of control over its public schools.  1997 Ct. S.A. 4(2)-(3).  Thus, even if it is the case that the "legal name of the district is the Hartford Public Schools," Hartford Public Schools System Policy and Administrative Manual ("HPS Policy Manual"), Policy 0050.1, Def. R. 56(a)(2) Statement, Tab A, Ex. 10, Hartford Public Schools is no longer identified with the City of Hartford through its Board of Education, as that Board has been dissolved.  The entity Hartford Public Schools remains but is now controlled by the State Board of Trustees.  Thus, the City of Hartford's lack of control is fundamentally irrelevant to whether Hartford Public Schools is a proper Defendant.  Moreover, the HPS Policy Manual establishes that the district Hartford Public Schools has "all the powers accruing to it by law," citing Conn. Gen. Stat. § 10-241.  Id.  Section 10-241 specifically provides that "[e]ach school district shall be a body corporate and shall have power to sue and be sued."  Conn. Gen. Stat. § 10-241.  The only effect Special Act No. 97-4 has on the present action is that Hartford Public Schools is no longer controlled by the City of Hartford, but remains a school district, like any other, capable of suing and being sued.  Accordingly, summary judgment is **denied** inasmuch as it is alleged that Hartford Public Schools is an improper Defendant.

     B.     Timeliness of Plaintiff's ADEA Claim:

A plaintiff seeking to recover under ADEA must file a civil action within 90 days of receiving a notice of right to sue.  Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984), citing 42 U. S. C. § 2000e-5(f)(1).  Defendants concede that Plaintiff's original Complaint, naming City of Hartford/Hartford Public Schools, was filed within the 90-day period, but argues that her Amended Complaint, naming Hartford

Public Schools, was not and that therefore Count One should be dismissed for failure to timely file.  Def. Mem. Supp. Summ. J. at 11.

Plaintiff's original Complaint names Hartford Public Schools as a Defendant, thus it is difficult to understand how she could have failed to meet the 90-day filing requirement when she filed her Amended Complaint.  Defendants seem to argue that City of Hartford/Hartford Public Schools is somehow an entirely different entity bearing no relation to Hartford Public Schools.  While this argument is facially unconvincing, even if filing the Amended Complaint as against Hartford Public Schools did present a problem, the amendment would relate back to the original filing date as both Complaints involve the same transaction or occurrence, Hartford Public Schools as a separate entity, to the extent that it was omitted, was omitted by error, and Hartford Public Schools is not prejudiced in its defense.[4]   See VKK Corp. v. NFL, 244 F.3d 114, 129 (2d Cir. 2001) (setting forth standard), citing Fed. R. Civ. P. 15(c).  As a result, Defendants' Motion for Summary Judgment as to Count One is **denied**.

    C.    Plaintiff's § 1983 Claims:

        1.    First Amendment Claim:

Plaintiff asserts a First Amendment violation in that Defendants allegedly retaliated against her for filing union grievances.  A plaintiff "making a First Amendment retaliation claim under § 1983 must initially demonstrate by a preponderance of the evidence that: (1) [her] speech was constitutionally protected, (2) [she] suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against [her], so that it can be said that [her] speech was a motivating factor in the determination."

---

[4]    Defendants do not even argue that there was prejudice.

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted).  Even if "a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct" and thus escape liability.  Id.

Public employees, such as Plaintiff, do "not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140, 103 S. Ct. 1684; 75 L. Ed. 2d 708 (1983), citing Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731; 20 L. Ed. 2d 811 (1968).  "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.  When "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48.  The inquiry is a question of law, not fact.  Id. at n. 7.

Should the employee's speech be shown to be a matter of public concern, a court must balance "the government's interest in the effective and efficient fulfillment of its responsibilities to the public" against the employee's right to speak.  Id. at 150.  It must be shown that "the employee's speech so threatens the government's effective operation that discipline of the

employee is justified." Melzer v. Bd. of Educ., 336 F.3d 185, 193 (2d Cir. 2003) (citation

omitted). Even if a defendant cannot demonstrate a compelling justification, it may still prevail

by showing "that it would have reached the same decision as to respondent's re-employment even

in the absence of the protected conduct." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429

U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Likewise, even if Defendant prevails on

the balancing test, an employee may recover by demonstrating that the motivation for the

discipline was retaliation for the speech itself and not the disruption it might cause. Melzer, 336

F.3d at 193.

Plaintiff contends that the Pickering balancing test should not apply under the present

circumstances as the fact that a union grievance was involved implicates the right to petition and

the right of association, not speech. Pl. Mem. Opp. Summ. J. at 16-18. The Second Circuit

recognizes that "it is anything but clear whether the public concern requirement applies to

associational claims made by government employees." Clue v. Cummings, 179 F.3d 57, n. 2 (2d

Cir. 1999); but see Wayte v. United States, 470 U.S. 598, n. 11, 105 S. Ct. 1524, 84 L. Ed. 2d

547 (1985) ("Although the right to petition and the right to free speech are separate guarantees,

they are related and generally subject to the same constitutional analysis"). Given this lack of

clarity, it is important to distinguish between "hybrid" free speech/free association claims and

pure speech and pure association claims. Id., citing Balton v. City of Milwaukee, 133 F.3d 1036,

1042 (7th Cir. 1998) (Cudahy, J. concurring). Pure association claims, as they entail associational

activity that likely takes place outside of the workplace, "generally do not involve interference

with the work relationship," thus balancing is unnecessary. Balton, 133 F.3d at 1041. Pure

speech cases, on the other hand, usually apply Pickering in "situations involving speech directed

at an employer, made at the place of employment or directly concerning the employer in some way." Melzer, 336 F.3d at 193-94.  Hybrid claims are likely to involve "associational activity of which speech was an essential component." Id. at 194.

It is not clear how this could be a pure right to associate case.  Here, Plaintiff's actions involve "speech directed at an employer, made at the place of employment, [and] directly concerning the employer..." Id. at 193-94.  The circumstances thus have the characteristics of a pure speech case suggesting that the Pickering test should apply.  However, by virtue of her union involvement and following union grievance procedures, Plaintiff's actions may constitute a hybrid case involving associational activity, with speech being an essential component. Id. at 194.  Recent Second Circuit law suggests that the Pickering test is applicable to hybrid claims as well as pure speech claims.  See Meltzer, 336 F.3d at 195 ("Associational rights, when exercised in conjunction with speech, are also sufficiently protected by Pickering").  Thus, the Pickering balancing test applies to Plaintiff's associational claims regardless of whether her grievance is a pure speech claim or a hybrid speech/association claim.

With respect to right to petition claims, Plaintiff relies primarily on a decision by this Court to support her claim that she should not be subject to the Pickering balancing test.  See Stellmaker v. De Petrillo, 710 F. Supp. 891, 89-93 (D. Conn. 1989) (citing among other cases a 5th Circuit decision for the proposition that right to petition claims are not subject to Pickering).  This decision is no longer an accurate statement of the law.  In the Second Circuit, right to petition claims are subject to the Pickering balancing test.  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993), cert denied 126 L. Ed. 2d 144, 114 S. Ct. 185 (1993).  Thus, Plaintiff cannot avoid Pickering by claiming a First Amendment right to petition.

11

As both Plaintiff's right to association claims and her right to petition claims are subject to the

Pickering test, it must be determined whether the substance of Plaintiff's grievance was a matter

of public concern.

Matters of public concern include speech that relates to "to any matter of political, social,

or other concern to the community..." Connick, 461 U.S. at 146.  Discussion regarding current

government policies and activities is perhaps the paradigmatic matter of public concern."

Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (citation omitted).  Speech concerning an

issue such as protesting discrimination are considered "a matter inherently of public concern."

Connick, 461 U.S. at 148.  However, allegations of discrimination that center on individual

discrimination and not system-wide discrimination do not reach matters of public concern.  See

Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 142 (2d Cir 1993) ("Had [plaintiff's]

complaints to her supervisors implicated system-wide discrimination they would have

unquestionably involved a matter of "public concern ... Here, however, there has been no

violation of the First Amendment, because [plaintiff's] complaints were "personal in nature and

generally related to her own situation").

Similarly, "retaliation against public employees solely for their union activities violates

the First Amendment." Clue, 179 F.3d at 60.  However, "an employee's speech, activity or

association, merely because it is union-related, does not touch on a matter of public concern as a

matter of law." Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985); see also  Gros v. Port Wash.

Police Dep't, 944 F. Supp. 1072, 1078 (E.D.N.Y 1996); and Peele v. New York City Dep't of

Social Services/Human Resources Admin., No. 92 Civ. 3765 (SWK), 1995 U.S. Dist. LEXIS

18226, *17 (December 7, 1995 S.D.N.Y), aff'd 112 F.3d 505 (1996) (both holding same).

Plaintiff does not allege, or argue in her briefs, systemic discrimination and/or retaliation.[5]  Her grievance pertains only to her own personal experiences with Dr. Mahoney and HPS.  Accordingly, with respect to her discrimination claims, she has not met the public concern prong of the Pickering balancing test.  Similarly, she fails to do so with respect to her union based complaints.  The substance of her complaint, personal discrimination/retaliation, is not a matter of public concern, thus discrimination on the basis of her grievance is not a matter of public concern.  Accordingly, summary judgment is **granted** on Plaintiff's First Amendment retaliation claims.

### 2.    Equal Protection Claim:

Plaintiff's equal protection claim is not based on a suspect classification or fundamental right, rather she invokes the "class of one" standard for equal protection claims.  Pl. Mem. Opp. Summ. J. at 25-26.  The equal protection clause demands "that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249; 87 L. Ed. 2d 313 (1985).  A plaintiff may recover as a "class of one" when it is alleged "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  "While proof of subjective ill will is not an essential element of a 'class of one' equal protection claim, ... a 'class of one' plaintiff cannot state an equal protection violation without showing that he was treated differently than similarly situated individuals were or would have been treated..."  Oneto v. Town of Hamden, 169 F.

---

[5]    Plaintiff does allege a policy of discrimination with respect to her equal protection claims, but it is defined in relation to herself as a "class of one" and does not rise above a claim that is fundamentally personal in nature.  Pl. Mem. Opp. Summ. J. at 25-28.

Supp. 2d 72,  81 (D. Conn. 2001) (citations omitted).  Differently situated individuals may, of course, be treated differently.  Allen v. Cuomo, 100 F.3d 253, 261 (2d Cir. 1996).

Plaintiff alleges numerous equal protection violations.  Plaintiff argues that a jury could rationally find that 1) Defendant Amato has ratified or adopted Mahoney's intent to disadvantage her in taking adverse action against Plaintiff, 2) Mahoney was motivated by "improper reasons" when she overloaded Plaintiff with tasks, did not provide adequate support, gave Plaintiff evaluations in bad faith, fabricating and/or magnifying performance deficiencies, and damaged her reputation in the community, 3) Defendants knew or should have know that the evaluations were in bad faith and that Mahoney was harassing Plaintiff, 4) Defendants failed to investigate Plaintiff's complaints and refused to allow Plaintiff an adequate opportunity to be heard, thus ratifying Mahoney's unlawful conduct, 5) Defendants violated the HPS Policy Manual by failing to notify the Hartford High Principal of Plaintiff's application for the position of Executive Vice Principal, failing to be allow her an interview for the position and, instead, hiring an unqualified individual, and 6) Defendants gave Plaintiff no further opportunity for advancement.  Pl. Mem. Opp. Summ. J. at 23-24.

Defendants first argue that Plaintiff's equal protection claims are really "an extension of her retaliation claim."  Def. Mem. Supp. Summ. J. at 15.  While it may be the case that the equal protection clause will not support a claim for retaliation, see Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) ("we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination"), as discussed above, Plaintiff's claim is that of a "class of one" and not retaliation.  Accordingly Bernheim does not serve as a basis for granting summary judgment.

14

Defendant also argues that Plaintiff's transfer to Quirk Middle School and her non-selection for the position of Executive Vice Principal should be upheld on the rational basis standard of review.  Def. Mem. Supp. Summ. J. at 18-20.[6]  The rational basis test requires only that the differential treatment "bears some rational relationship to a legitimate governmental purpose."  <u>United States Dep't of Agriculture v. Moreno</u>, 413 U.S. 528, 540, 93 S. Ct. 2821; 37 L. Ed. 2d 782 (1973).  It may indeed be irrelevant whether the purported rationale in fact motivated the decision.  <u>FCC v. Beach Communications</u>, 508 U.S. 307, 315, 113 S. Ct. 2096; 124 L. Ed. 2d 211 (1993).  However, the relationship between the distinction and the purported rationale must not be "so attenuated as to render the distinction arbitrary or irrational."  <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 446, 105 S. Ct. 3249; 87 L. Ed. 2d 313 (1985).

Defendant argues that the necessity of overhauling the Hartford Public School System after the Connecticut legislature removed it from City control justifies both actions with respect to Plaintiff.  Def. Mem. Opp. Summ. J. at 18-20.[7]  The desire to infuse an apparently troubled school system with new life is certainly a legitimate interest and effecting personnel changes in order to accomplish that goal is certainly rationally related to that interest.  Similarly deviation from standard hiring procedures is conceivably rationally related to that goal or the goal of

---

[6]    These appear to be the only grounds upon which Defendant moves for summary judgment once Defendants' <u>Bernheim</u> claim is eliminated.  Plaintiff makes it clear in her Opposition Brief, that she is basing her equal protection claim on a broader factual base, however Defendant fails to address those bases in its original Motion or Reply Brief.

[7]    Defendant also argues, based on a letter to Anthony Amato, that Plaintiff's transfer was voluntary.  Def. Mem. Supp. Summ. J. at 18.  However, Plaintiff raises a sufficient question of fact surrounding the letter as to preclude summary judgment on that basis.  Pl. R. 56(a)(2) Statement, Part A, Response to ¶ 16.

achieving accreditation.  Moreover, given that a court need not inquire as to whether this was the

actual motivation for the transfer and non-selection, Beach Communications, 508 U.S. at 315,

there is no factual issue to be resolved by trial.

Accordingly, summary judgment is **granted** with respect to Plaintiff's equal protection

claims surrounding and related to her transfer/demotion and non-selection for the Executive Vice

Principal position.  However, to the extent that Plaintiff has alleged equal protection violations

based on circumstances not pertaining to these events, Defendant has not met its burden for

summary judgment with respect to them, and such claims survive this Ruling.

3.    Due Process Claim:

"The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property."  Board of

Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  "The Fourteenth

Amendment's procedural protection of property[8] is a safeguard of the security of interests that a

person has already acquired in specific benefits."  Id. at 576; see also Kaluczky v. City of White

Plains, 57 F.3d 202, 211 (2d Cir. 1995) ("in order to state a substantive due process claim

premised on a deprivation of property, [Plaintiff] would have to establish that [she] was deprived

of a valid 'property interest' in a constitutionally-protected benefit").  Property interests are not

created by the Constitution and must be "defined by existing rules or understandings that stem

from an independent source such as state law -- rules or understandings that secure certain

---

[8]      While it is unclear, based on her Complaint, under which theory Plaintiff establishes her due
process claim (e.g. based on a property or liberty interest.), Plaintiff relies exclusively on a
property interest claim in her Opposition Brief.  Pl. Mem. Opp. Summ. J. at 28-29.  Thus, her
claim is construed as such.

benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. A claimant must have more than a "unilateral expectation" of a property interest, she must "have a legitimate claim of entitlement to it." Id. However, property interests "may take many forms." Id. at 576.

Once a property interest has been established, courts must evaluate the extent of the due process protection a complainant must receive. With respect to procedural due process claims, "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." Id. at 569-70. In order to determine exactly what process is due courts must consider three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893; 47 L. Ed. 2d 18 (1976). "In some instances, it also has been held that the availability under state law of a post-deprivation hearing or tort remedies completely will satisfy [sic] due process and bar a section 1983 claim." Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 784 (2d Cir. 1991), cert denied 502 U.S. 1013, 116 L. Ed. 2d 749, 112 S. Ct. 657 (1991) (citations omitted). With respect to substantive due process claims involving a property interest, Defendants' actions need only be rationally related to a legitimate interest. Pineman v. Fallon, 842 F.2d 598, 601 (2d Cir. 1988), cert denied 488 U.S. 824, 102 L. Ed. 2d 48, 109 S. Ct. 72 (1988).

As a threshold matter, it remains unclear whether Plaintiff is asserting a procedural or

substantive due process claim.  Defendants argue for summary judgment on both grounds, Def.

Mem. Supp. Summ. J. at 20-22, however Plaintiff fails to clarify the cause of action in her

Opposition Brief.  Indeed, Plaintiff's Opposition is devoted entirely to asserting a property

interest and fails to address whether the process she received was proper or whether Defendants'

actions survive a rational basis review.  Pl. Mem. Opp. Summ. J. at 28-30.[9]  In the absence of a

more definite statement as to whether her claim is procedural or substantive, it is noted that

Plaintiff cites only to cases involving procedural due process claims.  Pl. Mem. Opp. Summ. J. at

28-29, citing Perry v. Sindermann, 408 U.S. 593, 60, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) and

Ezekwo, 940 F.2d at 783.  Accordingly, Plaintiff's claim is construed as a procedural due process

claim.[10]  As for a procedural due process claim, Defendants again rely on the "voluntariness" of

Plaintiff's transfer.  Def. Mem. Supp. Summ. J. at 21-22.  As already discussed, Plaintiff has

raised a sufficient question of fact on the issue to survive summary judgment.[11]  Defendants' only

remaining argument is that Plaintiff does not have a recognizable property interest.

Plaintiff argues that her property interest was created by the "Teacher Tenure Act, the

Administrative Manual and statements in the HPSA Agreement that refer to the 'rights' under the

Administrative Manual..."  Pl. Mem. Opp. Summ. J. at 29.  Plaintiff asserts that the cited

---

[9]     Plaintiff does argue that she was not accorded the proper procedures under HPS policies, Pl. Mem.
Opp. Summ. J. at 29-30, however this argument is not relevant to a substantive due process
inquiry.  As stated above, the question is what process was given and whether that process was
sufficient as a Constitutional matter, see Mathews v. Eldridge, 424 U.S. at 335 (requiring
balancing of interests), not a contractual one.

[10]    If Plaintiff did intend to assert a substantive due process claim, by failing to address Defendants'
rational basis argument, she is deemed to have conceded the matter.

[11]    Although Defendants assert that "Plaintiff was not entitled to any additional process[,]" the legal
standard for determining whether the process given was Constitutionally sufficient is not cited or
even discussed.  Without having the issue briefed at all, it would be inappropriate to consider the
question in this Ruling.

provisions "created specific obligations in [D]efendants and rights in [P]laintiff. <u>Id</u>. As such,

Plaintiff alleges that she has

> the right to be free of harassment[,] ... the right to complain of harassment and have it
> promptly and thoroughly investigated and remedied[,] ... [the] right to equal employment
> opportunity, a right to have her qualifications for the position, and those of other
> candidates, carefully scrutinized to see whether they met the previously adopted written
> qualification standards[,] [and provided that she meets those requirements,] the right to be
> seriously considered and interviewed by the decision maker...

<u>Id</u>. at 29-30. Thus, the dispositive issue is whether these alleged contractual rights do actually

give rise to a protected property interest.

While it is true that state law will determine the viability of a property interest, <u>Roth</u>, 408

U.S. at 577, "not every contractual benefit rises to the level of a constitutionally protected

property interest." <u>Ezekwo</u>, 940 F.2d at 782. "It is neither workable nor within the intent of

section 1983 to convert every breach of contract claim ... into a federal claim. <u>Id</u>.; <u>see also</u>

<u>Costello v. Fairfield</u>, 811 F.2d 782, 784 (2d Cir. 1987) (a "contract dispute, however, does not

give rise to a cause of action under section 1983"). Plaintiff acknowledges that she is not

asserting a right to position. Pl. Mem. Opp. Summ. J. at 28. Plaintiff's claims are more logically

interpreted as asserting a right to employment free of harassment and a right to be given equal

consideration for employment opportunities and arguing that the procedural protections she was

afforded for those rights were inadequate. As evidence of this inadequacy, Plaintiff points to the

procedural protections contained in the alleged contract. To the extent that Plaintiff is asking that

the specific procedural protections contained in the alleged contract be Constitutionalized, this

argument is rejected for the reasons cited above. The claim that Defendants failed to follow their

own procedures is more properly asserted as a contract violation and is not dispositive as to the

issue of what process was due.  See Mathews v. Eldridge, 424 U.S. at 335 (requiring interest balancing).  The only remaining question is whether the alleged contract actually establishes a property interest in being given equal consideration for a position and being employed free of harassment.

Connecticut law is clear that employment manuals can be contractually binding.  See Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 532-33, 733 A.2d 197, 204-05 (1999) ("It is firmly established that 'statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee'") (citations omitted).[12]  In the absence of definitive contractual language the question of whether the alleged contract was intended to be binding, is a question of fact, not law. Tremaine v. Tremaine, 235 Conn. 45, 57, 663 A.2d 387, 394 (1995).

The HPS Policy Manual distinguishes between policies and regulations.  Policies "*may* be legally binding" whereas a regulation is a rule or "statement of something that must be done."  Pl. R. 56(a)(2) Statement, Tab A, Ex. 10 (emphasis added).  It is unclear whether Plaintiff's alleged contractual right to be free of harassment and given equal employment opportunity is a regulation or a policy.  There is certainly some evidence to suggest that the right to be free of harassment is only a policy and therefore not binding.  The HPS Policy Manual states that "[i]t is the *policy* of the Hartford Board of Education that all faculty, staff and students, parents and all other members

---

[12]    Defendants argument that a property interest in employment only arises where termination is prohibited without cause is inapplicable.  Def. Reply Br. at 6-7, citing Legg v. Dellavolpe, 228 F. Supp. 2d 51, 61 (D. Conn. 2002) ("In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause").  Legg stands only for the proposition that a property interest in employment cannot arise when the alleged contract allows for termination without cause.  It is not a universal statement that termination without cause is the only context in which a property right in employment can arise.

of the school community ... are entitled to freedoms from any kind of personal harassment." Id. (emphasis added).  Furthermore, based on the legal references contained in the section, it is unclear whether the Manual is intended to establish a separate contractual right or simply be a statement of current state and federal law.  Accordingly, there is a factual question as to whether a property interest was created and must be resolved by a fact finder.

Summary judgment is therefore **denied** on Plaintiff's due process claims.  However, Plaintiff is only permitted to proceed to attempt to prove that the Manual creates a binding right to employment free of harassment and given equal employment opportunity and not her claim to specific rights to an effective investigation and specific procedural consideration for her employment applications.  Plaintiff must also establish that these rights have been violated. What process is due is then determined by a Constitutional analysis, not a contractual one.

D.    Qualified Immunity:

Defendant Amato argues that he should be accorded qualified immunity from Plaintiff's § 1983 claims.  Def. Mem. Supp. Summ. J. at 22-27.  In order to determine whether a party is entitled to qualified immunity, courts must follow a three-step inquiry: 1) It must be determined whether Plaintiff alleged a Constitutional violation; 2) Whether that right was clearly established at the time of the conduct in question; and 3) Whether Defendant's conduct was objectively reasonable.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003).  Here, Plaintiff clearly alleges Constitutional violations.  However, at this point only her equal protection claims and due process claims remain viable.  Whether or not the right was clearly established must be determined assuming that Plaintiff's allegations were proven.  Id.  Qualified immunity is not available "simply because the precise conduct at issue has not been previously

held unlawful" so long as "the available precedents that might usefully have guided the
Defendants leave the unlawfulness of their action at least unclear."  Vega v. Miller, 273 F.3d 460,
467 (2d Cir. 2001).  Even if the right is clearly established a party may enjoy immunity if "it was
objectively reasonable to believe that the conduct did not violate clearly established rights."
McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999).  Summary
judgment on qualified immunity is generally inappropriate when issues of material fact must be
resolved.  See Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court
could not determine whether the officers reasonably believed that their force was not excessive
when several material facts were still in dispute, summary judgment on the basis of qualified
immunity was precluded.").

     1.    Equal Protection:

     Although summary judgment was granted on some of Plaintiff's equal protection claims,
Plaintiff asserted violations in her Complaint and Opposition Brief that Defendants' successful
arguments did not address.  Accordingly, Defendant Amato's qualified immunity will be
considered with respect to those remaining claims.

     In her Opposition Brief Plaintiff switches gears and argues her theory of equal protection
under LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), cert denied 450 U.S. 959, 67 L. Ed. 2d
383, 101 S. Ct. 1418.  This is a different basis for her claim than the "class of one" theory
asserted earlier, but nevertheless is what Plaintiff relies on to defeat Defendants' qualified
immunity argument.  While not often cited, Leclair held that equal protection liability could stem
from proof that "(1) the person, compared with others similarly situated, was selectively treated;
and (2) that such selective treatment was based on impermissible considerations such as race,

22

religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  627 F.2d at 609-10.  Plaintiff runs into problems immediately with respect to this theory of recovery, or even a class of one theory,  because she has never argued with any specificity that similarly situated individuals were treated differently than Plaintiff. Defendant did not move for summary judgment with respect to this point on the merits of Plaintiff's equal protection claim, thus Plaintiff did not address the issue in her opposition and it was not addressed above.   However, by affirmatively asserting this theory to defeat qualified immunity, Plaintiff puts the matter at issue and must meet her burden to defeat Defendants' Motion.  See Celotex, 477 U.S. at 324 (Where the nonmoving party bears the ultimate burden of proof at trial, it must go beyond the pleadings to demonstrate a genuine issue for trial).

In the employment context, similarly situated has been taken to mean that the employees must have reported to the same supervisor as Plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to Plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.  See e.g. Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986) (standard applied in the context of a Title VII action), affirmed 814 F.2d 653 (2d Cir. 1987).  It is necessary to have some sort of evidentiary showing on this question in order to determine, at a minimum, whether Defendant Amato's conduct was objectively reasonable.  However, nowhere in Plaintiff's opposition papers does she provide enough information to effectively evaluate her claims that others similarly situated were treated differently.  "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  Amnesty

America. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); see also Delaware & H. R. Co. v. Conrail, 902 F.2d at 178 ("Conclusory allegations will not suffice to create a genuine issue"). Accordingly, summary judgment is **granted** in favor of Defendant Amato on Plaintiff's equal protection claims as Amato is entitled to qualified immunity.

        2.     Due Process:

Although, the general Constitutional right to procedural due process is clearly established, Roth, 408 U.S. at 569, for such a right to be actionable, Plaintiff must have an independently created property interest. Roth, 408 U.S. at 577. As discussed above, there is a factual dispute over whether the HPS Policy Manual is actually binding by state law and thus establishes a property interest in Plaintiff's asserted rights. Although a court is required to determine whether a right is clearly established by looking at the facts in the light most favorable to Plaintiff, this factual dispute alone suggests qualified immunity is appropriate. It suggests not only that her right was not clearly established, but that at a minimum that Defendant Amato was reasonable in believing that his actions did not constitute a deprivation of procedural due process.

Plaintiff argues that any dispute over a material fact requires that immunity not be granted. While this is generally true, Roach, 165 F.3d at 144, this is not a dispute over what Defendant did or did not do, this is a dispute over the very existence of the alleged property right. Even if Plaintiff ultimately prevails in establishing a property interest, such a dispute can only yield the result that Defendant Amato's belief that no Constitutional violation occurred was reasonable. See Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). Accordingly, summary judgment is **granted**, with respect to

Defendant Amato, on Plaintiff's remaining due process claims on the grounds that he is entitled to qualified immunity. As a result, all claims pertaining to Defendant Amato are hereby **dismissed**.

E.      Preemption of Contract Claims:

Plaintiff also asserts a state law breach of contract claim based on the provisions of the HPS Policy Manual. Defendant HPS[13] argues that these claims are preempted and not actionable as state law claims.

Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, "provides federal-court jurisdiction over controversies involving [Collective Bargaining Agreements ("CBA")] and 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" Hawaiian Airlines v. Norris, 512 U.S. 246, n. 7, 14 S. Ct. 2239, 129 L. Ed. 2d 203 (1994) (citations omitted). When "the resolution of a state-law claim depends on an interpretation of [a CBA], the claim is preempted." Id. at 261 (citations omitted). "In extending the pre-emptive effect of § 301 ... it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). As a result, section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994). Section 301 "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements" and thus ensures the uniformity of the law. Lingle v. Norge

---

[13]      This Count is directed only to Defendant HPS. Amended Complaint, ¶ 59.

<u>Div. of Magic Chef</u>, 486 U.S. 399, 409, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988).  As a result, in determining whether the interpretation of a CBA is necessary to the resolution of a claim, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  <u>Livadas</u>, 512 U.S. at 124.  Nor is the fact a grievance could be filed under identical facts dispositive of a preemption question. <u>Id</u>. at 123-24.

Defendant HPS advances several arguments as to why Plaintiff's contract based claims are preempted: 1) The "notion that individual bargaining unit members could agree to an employment contract with their public school employer concerning matters such as promotions and transfers is antithetical to the notion of an exclusive bargaining agent and the very purpose of the Connecticut Teachers Negotiation Act..." Def. Mem. Supp. Summ. J. at 32 <u>and</u> Def. Reply Br. at 9-10; 2) That violations of the HPS Policy Manual are incorporated by reference into the CBA as grievable and that this is the only appropriate remedy for Plaintiff, Def. Reply Br. at 8-9; and 3) That in order to determine the viability of Plaintiff's claims, the CBA would have to be interpreted, at a minimum, to determine whether or not it was intended to be the sole remedy between the relevant parties, <u>Id</u>. at 9.[14]

With respect to Defendant HPS' first argument, while this may be the case, as a policy argument, it is not determinative as to the question of whether the HPS Policy Manual actually constitutes a binding agreement.  As discussed, under Connecticut law this is a factual question

---

[14]    Defendant HPS also argues that the provisions of the HPS Policy Manual itself were not binding and did not require any specific action (e.g. an interview.  Def. Mem. Supp. Summ. J. at 32.  As discussed above, the binding nature of the HPS Policy Manual is a factual question that cannot be resolved here.

that cannot be resolved in this Ruling.  Defendant HPS' argument concerning grievances is

similarly unconvincing.  The mere fact that Plaintiff could have also filed a grievance under the

CBA is not determinative of the question of preemption.  Livadas, 512 U.S. at 124.  Defendant

HPS' final argument, if accepted, would result in all independent employment related state law

claims being swallowed by collective bargaining agreements.  It is difficult to imagine when one

would not have to look to a CBA to determine if it was to be the sole remedy between the parties

and thus all state law contractual claims would be preempted.[15]  Cf. Foy v. Pratt & Whitney

Group, 127 F.3d 229, 234 (2d Cir. 1997) ("But the review of the CBA needed to decide

preemption in this case is not in itself 'interpretation' warranting preemption; if it were, the

preemption doctrine under § 301 would swallow the rule that employees can assert nonnegotiable

state law rights that are independent of their collective bargaining agreements") (citation

omitted).  This argument misses the more general point that although "[i]ndividual contracts

cannot subtract from collective ones, ... they may add to them in matters covered by the

collective bargain" and whether they in fact do is a question "to be determined by appropriate

forums under the law of contracts applicable."  Caterpillar, Inc. v. Williams, 482 U.S. 386, 396,

107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).  "Thus, individual employment contracts are not

inevitably superseded by any subsequent collective agreement covering an individual employee,

and claims based upon them may arise under state law."  Id.

Accordingly, summary judgment on preemption grounds is **denied**.  It has yet to be

determined whether Plaintiff does in fact have a viable contract claim and no ruling as to that

---

[15]    It should also be noted that Defendants do not argue that Plaintiff's claim is in fact prohibited
under the CBA.

point is made now or anywhere in this Ruling.

## IV. CONCLUSION:

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 32] is **granted in part**. Summary judgment is **denied** with respect to Plaintiff's ADEA claim, any equal protection claim asserted in her Complaint and Opposition Brief not pertaining to her transfer and non-selection for Executive Vice Principal at HPHS, her due process claim as set forth in this Ruling, and the contract based claim. Summary judgment is **granted** with respect to Plaintiff's First Amendment claims, equal protection claims pertaining to her transfer and non-selection for Executive Vice Principal at HPHS, and qualified immunity is granted to Defendant Amato on any remaining equal protection and due process claims. As a result, all claims pertaining to Defendant Amato are **dismissed** and he is no longer party to this action.

SO ORDERED.

Dated at New Haven, Connecticut, December ___, 2003.

_____/S/_____

Peter C. Dorsey, U.S. District Judge
United States District Court

28