UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARA LEE, | : | **DOCKET NO.: 3:02CV819 (PCD)** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **HARTFORD PUBLIC SCHOOLS,** | : | 22 |
| **Defendant.** | : | **March 18, 2004** |

### PLAINTIFF'S SECTION C TRIAL PREPARATION ORDER COMPLIANCE

Plaintiff hereby complies with the Court's Trial Preparation Order, Part C 7 through 11, with the following.

### 7. BASIS FOR FEDERAL JURISDICTION

The basis for federal jurisdiction of the First and Second Counts is federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3). The basis for federal jurisdiction of the Third Count is supplemental jurisdiction pursuant to 28 U.S.C. §1367.

### 8. NATURE OF THE CAUSES OF ACTION AND RELIEF SOUGHT

The First Count is a claim for retaliation in violation of the Age Discrimination in Employment Act. Plaintiff claims that the defendant, through its management employees, was motivated at least in part by her having made a complaint of age discrimination and having asked the defendant to investigate it thoroughly. In this Count, she seeks back pay, front pay if the Court cannot or will not instate her into a higher-level position, lost benefits, liquidated damages,

1

What did you expect would happen when you made your complaint? (What did happen?)

- Have you ever been involved in senior management of a corporation?

- Have you ever been involved in personnel management, human resources, or employee or labor relations?

- Have you ever been sued for, named in connection with, or participated in defending any claim involving employee or labor relations, a charge of harassment or discrimination, or employment termination? (Details) Has any member of your family, or anyone close to you, been sued for discrimination or harassment? (Details)

- Do you think that an employee who thinks she is being discriminated against should be able to ask her employer to investigate that? If the employer decides she was wrong, and it was not discrimination, do you think the employer should be able to punish her for making the complaint?

- Have you ever held a political office? (In what capacity? Where?)

- Do you have an opinion, one way or the other, whether a school administrator should be permitted to sue the public school system, if she believes they treated her unfairly?

- Have you ever had to discipline employees?

- Do you think younger employees are generally more vigorous or more enthusiastic about their work and may perform better than older employees?

3

## 10. STATEMENT IN LIEU OF OPENING STATEMENT

Here is what Plaintiff Clara Lee expects to show, through her evidence. Clara Lee has

spent almost her entire adult life working to educate the children of the Hartford Public Schools.

Most of those years, she taught or was a vice principal at Weaver High School, in the North End

of Hartford, where she had excellent relations with the school community. She started in 1967 as

a new teacher, straight out of college, and she rose through the ranks to be a Vice Principal, and

then Executive Vice Principal of Weaver High School. Ms. Lee expects to show you that she

received excellent performance evaluations nearly every year, reflecting her dedication to her

students and her creative work in the schools. But there were two years in which her career was

torpedoed by a new principal.

In the fall of 1997, the Hartford Public Schools hired a new Principal for Weaver High

School, Dr. Mahoney. For reasons Ms. Lee could not understand, Dr. Mahoney was hostile to

her from the start. She tried very hard to please Dr. Mahoney, and she continued to do her job as

well as she could, but nothing she did seemed to help. At the end of the 1997-98 school year, Dr.

Mahoney gave Clara Lee the first poor evaluation she had ever had, and Ms. Lee believed it was

inaccurate and unfair. Ms. Lee filed a union grievance, and the Hartford Public Schools simply

removed it from her personnel file and refused to do anything else about Ms. Lee's complaint

about Dr. Mahoney's conduct. In the fall of 1998, Ms. Lee sought help from the Hartford Public

Schools central administration, to help her develop a better working relationship with Dr.

4

Mahoney. But Dr. Mahoney did not respond to this effort. Instead, Dr. Mahoney began

overloading Ms. Lee with job duties not usually performed by the Executive Vice Principal of a

high school, until Ms. Lee was overloaded with job duties so numerous it was nearly impossible

to get her work done. At the same time, Dr. Mahoney began writing notes to Ms. Lee, with

copies to others, accusing her of failing to perform important job duties or not completing work

in a timely manner. She wrote a mid-year evaluation that claimed Ms. Lee "needed

improvement" in her job performance.

By January, 1999, Ms. Lee recognized that Dr. Mahoney was treating her seriously

unfairly, but she did not know why. She had no permanent secretary, as her secretary had been

fired, yet Dr. Mahoney kept loading her up with clerical tasks. Ms. Lee discussed the matter with

the union representative who had assisted her the year before, Dr. Macy, and as she described

certain comments Dr. Mahoney and her close ally Fran DiFiore had made, Ms. Lee and Dr. Macy

both reached the conclusion that Dr. Mahoney might be disfavoring Ms. Lee, not wanting to

work with her, and disadvantaging her, because of her age. Clara Lee attempted to arrange an

informal meeting with Dr. Mahoney to discuss her concerns, but Dr. Mahoney refused to meet

with her. Ms. Lee then filed a union grievance in which she complained that Dr. Mahoney was

harassing her and had made ageist remarks. The Hartford Public Schools did not respond. But

Dr. Mahoney responded to Ms. Lee's grievance with increasing levels of criticism, until she was

directly accusing Ms. Lee of "lying" about incidents that simply did not call for such accusations

5

or such language.

Ms. Lee and her attorney expect the defendant to try to prove that plaintiff was just trying to deflect attention from real issues with her job performance, when she complained about harassment and age discrimination. But they expect to prove, to your satisfaction, that the school administration never actually bothered to investigate whether plaintiff's claim was true, and Dr. Mahoney actually was fabricating, or creating, problems with Clara Lee's job performance, because of ill will. They never really discovered how little sense Dr. Mahoney's constant accusations made. That's because they never bothered to follow their own written policies, which promise they will promptly and thoroughly investigate a complaint of harassment or discrimination. If they had, the documents right in front of their faces would have shown them that something was wrong with Dr. Mahoney's accusations and her treatment of Ms. Lee. Clara Lee and her attorney expect to show you that.

Instead of thoroughly investigating Ms. Lee's complaint, Ms. Lee expects to prove that the Superintendent of Schools and the Director of Human Resources retaliated against her for making her complaints of age discrimination and harassment. After that time, they never again allowed her to be a high school administrator. Even though her performance evaluations after Dr. Mahoney have also been very good to excellent, they have allowed her no other opportunity than a middle school special education assignment at a lower level of pay. When other positions opened up at a high school, they broke their own rules again, to give the opportunity to a much

6

younger and less qualified individual, rather than provide Ms. Lee an opportunity to show, once again, as she had for years before Dr. Mahoney came along, that she is an excellent high school administrator. They did not even allow Ms. Lee an opportunity to be considered for the position by the principal of the high school – they did not tell him she had applied or was available.

Ms. Lee expects to prove that she was treated less favorably than other administrators, for no legitimate reason. She expects to prove that the Hartford Public Schools had made certain commitments to her, as an administrative employee: that it would not retaliate against her if she made a complaint of discrimination or harassment and asked the administration to investigate her claim; that it would provide equal employment opportunities to her, and make decisions about promotional opportunities based upon the written qualification standards it had published. She expects to prove that the Hartford Public Schools failed to meet its obligations to her under those contractual promises.

## 11. REQUESTS FOR JURY CHARGES

Plaintiff requests that the Court charge the jury as follows.

### A. ADEA RETALIATION CLAIM.

1. The first claim or cause of action in Ms. Lee's complaint is brought under the Age Discrimination in Employment Act. That law provides:

It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or

7

because such individual ... has made a charge of age discrimination.

29 U.S.C. Sec. 623(d).

Ms. Lee does not have to prove that Dr. Mahoney actually discriminated against her because of her age, or that her age was a motivating factor in any decision or action. This claim is not for age discrimination, but for the Hartford Public Schools, through its management employees, retaliating against her, or taking an action against her, to punish her for making a complaint of age discrimination, or to inhibit such complaints. Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564 (2nd Cir. 1989). "A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint." Davis v. State University of New York, 802 F.2d 638, 642 (2nd Cir. 1986); EEOC v. Kallir, Phillips, Ross, Inc., 401 F.Supp. 66 (S.D.N.Y. 1975), aff'd 559 F.2d 1203, cert. denied, 434 U.S. 920 (1977).

Ms. Lee need only prove that she engaged in protected activity, in that she made a complaint of age discrimination; the defendant's management employees were aware of that activity; she suffered adverse employment decisions, such as a refusal to provide her with an opportunity for which she applied; and that in refusing this opportunity the defendant was motivated, in part, by her complaint of discrimination. Davis, supra.

2. Ms. Lee's burden of proof on this claim is to show that it is more likely than not that her complaint of age discrimination and harassment was a motivating factor in the defendant's decision not to provide her with any opportunity to be considered for the position of Executive

8

Vice Principal of Hartford High or any other promotional opportunity in or after the spring of 2000. Ms. Lee can prevail on this claim even though other factors also motivated the decision, so long as her charge of age discrimination actually motivated the decision also. Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1350 (7th Cir. 1995); Stratton v. Dept For Aging For the City of New York, 132 F.3d 869, 878, 879 (2d Cir. 1997); Stern v. Trustees of Columbia University of the City of New York, 131 F.3d 305, 312 (2d Cir. 1997).

3. In order to determine whether retaliation was a motivating factor in defendant's decisions, you should consider all of the circumstantial and direct evidence of intent as may be available. A purpose or intent to retaliate may often be inferred from the totality of the facts. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977) (equal protection). Accord, United States v. Tierney, 760 F.2d 382, 387-89 (1st Cir. 1985). Stern v. Trustees of Columbia University of the City of New York, 131 F.3d 305, 314 (2d Cir. 1997), citing Washington v. Davis, 426 U.S. 229, 242 (1976) ("an invidious discriminatory purpose may often be inferred from the totality of the relevant facts").

4. In determining the defendant's motivations, you should consider that intent or motive can rarely be established by direct evidence, and must often be proved circumstantially and by inference. Ms. Lee is not required to provide direct proof of unlawful motive, intent or design. A motive, intent or design to violate a person's rights, if it exists, is seldom admitted and may be inferred from the existence of other facts. Ms. Lee is not required to show you a "smoking gun,"

9

or an admission by the defendant's employees that they took her age discrimination and

harassment complaint into consideration when they made their decisions. Rather, you may draw

an inference that Ms. Lee's complaint was a motivating factor in not considering her for the

Hartford High position or for any further promotional opportunities, if you find that the

defendant was aware of her complaint of age discrimination, and that at the time of these

opportunities she was qualified for the positions but only younger employees who had never

complained of discrimination were considered. Reeves v. Sanderson Plumbing Products, Inc.,

530 U.S. 133 (2000); Missouri National Education Association v. New Madrid County School

District, 810 F.2d 164 (8th Cir. 1987); Rookard v. Health & Hospitals Corp., 710 F.2d 41 (2d

Cir. 1983); Arlington Heights v. Metro Housing Corp., 429 U.S. 252 (1977).

5. Among the circumstantial evidence you may consider in order to determine whether

the defendant's intent or motive was retaliatory are the following. First, the specific sequence of

events leading up to Ms. Lee's demotion in August, 1999 may shed some light on the defendant's

motives. You may consider the treatment of her complaint of harassment and age discrimination

by the Hartford Public Schools at the time she made the complaint. The historical background of

the decision not to provide her an opportunity for the job as Executive Vice Principal at Hartford

High or any other opportunity is a source of evidence of motive or intent, particularly if it reveals

a series of official actions taken for invidious purposes. However, this is not to say that a

consistent pattern is necessary to find discrimination or retaliation. A single governmental act

10

may also constitute such a violation.  Second, departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role.  Substantive departures too may be relevant, particularly if the factors usually considered important by the decision maker strongly favor a decision contrary to the one reached.  Finally, you can consider whether the reasons offered by the defendant for the decision not even to inform Dr. Colon that Ms. Lee had applied for the job are believable, or whether they are a pretext for retaliation.  Actions taken by an employer that disadvantage an employee for no logical reason constitute strong evidence of an intent to discriminate or retaliate.  If you find that the defendant's reasons are not worthy of belief, or that they were not the true reason for the decision, this alone may be sufficient to establish that defendant's actions were taken with a discriminatory or retaliatory motive.  However, it is up to you to decide, based upon all of the evidence presented, whether or not Ms. Lee has proved that it is more likely than not that Defendant acted with a discriminatory or retaliatory motive.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 274 (2nd Cir. 1981), *cert. denied* 455 U.S. 988 (1982).

The Superintendent and the Director of Human Resources claim that they did not provide an opportunity for Ms. Lee to be considered for the position as Executive Vice Principal at Hartford High, because the Superintendent had decided to give the new Principal, Jose Colon, "carte blanche" to select anyone he liked.  They assert that they never informed him of who had

11

applied, but allowed him to select anyone he happened to know he wanted to work with. Ms.

Lee asserts this was a departure from the standard practices of the Hartford Public Schools which

was irrational and is not worthy of credence as the reason she was denied even the opportunity to

be considered by Dr. Colon for the position. Ms. Lee need not prove that she was the only

qualified candidate, or the sole qualified candidate, for that position; it is sufficient if she proves

that she met the stated qualifications for the postiion, but the defendant failed even to consider

her for it. Meiri v. Dacon, 759 F.2d 989, 996 n.10 (2nd Cir.), *cert. denied* 474 U.S. 829 (1985).

6. To the extent the evidence shows that defendant's proffered reasons for refusing to

promote Ms. Lee were due to a mixture of legitimate and illegitimate motives, Ms. Lee is not

required to disprove any of those motives. Rather, once Ms. Lee has established that an

illegitimate motive was one of the motivating factors in the decisionmaking, the burden then

shifts to the defendant to prove, by a preponderance of the evidence, that even in the absence of

the illegitimate motive, it would have reached the same decision regarding promotion. The

defendant cannot meet this burden merely by showing that, at the time of the decision, it was

motivated in part by a legitimate reason. Rather, the employer must show that its legitimate

reason, standing alone, would have induced it to make the same decision. Price Waterhouse v.

Hopkins, 490 U.S. 228, 242, 246-47, 252-53 (1989).

7. If you find, by a preponderance of the evidence, that retaliation for making a charge of

age discrimination was a determining factor in any of the decisions not to promote Ms. Lee in the

12

spring of 2000 or thereafter, then she has proven her claim of retaliation under the ADEA, and she is entitled to damages under the first cause of action in her complaint. The purpose of these damages is to compensate Ms. Lee for any wage and benefit losses she may have suffered due to the defendant's retaliation. <u>Albermarle Paper Co. v. Moody</u>, 422 U.S. 405, 418 (1975); 29 U.S.C. §633a. You must determine whether Ms. Lee suffered a loss of earnings and benefits as a result of retaliation for complaining of age discrimination and harassment, and if so, what was the amount of her loss. Ms. Lee is entitled to the wages, including periodic raises, bonuses and increases, and the benefits she would have reasonably expected to earn, if she had been given the opportunity as Executive Vice Principal, or another available position.

8. If you find for Ms. Lee on her claim of retaliation, then you must determine whether the defendant acted willfully or showed reckless disregard for whether its conduct was prohibited by the Age Discrimination in Employment Act. An employer acts in reckless disregard if it is aware that its conduct in retaliating against Ms. Lee for complaining of age discrimination and harassment might violate the Age Discrimination in Employment Act, but it took the action anyway, without concern for whether or not it would violate those rights. If you find that Mr. Amato and Mr. Stacy were aware of the law against retaliation for making a charge of age discrimination, but acted with indifference, or without interest or concern for Ms. Lee's rights under this law, then you must find that their violation was willful. But if you find that they acted reasonably and in good faith, even though it later turns out that their conduct violated the ADEA,

13

then willfulness is not proved. Ms. Lee does not have to provide direct evidence of reckless

disregard for her rights; if you find that the employer acted without making any reasonable effort

to determine whether the decision violated her rights under the law, then you may find its actions

to be willful. Trans World Airlines v. Thurston, 469 U.S. 111 (1985); Stratton v. Dept For

Aging For the City of New York, 132 F.3d 869, 881 (2d Cir. 1997) (upholding judgment,

including liquidated damages, against a municipal entity in violation of the ADEA without

discussion of the liquidated damages); Padilla v. Metro-North Commuter R.R., 92 F.3d 117,

123-24 (2d Cir. 1996) (same); Epter v. N.Y. City Transit Authority, 216 F. Supp. 2d 131, 137

(S.D.N.Y. 2002); Hazen Paper Co. v. Biggins, 507 U.S. 604, 617, 113 S.Ct. 1701, 1709-10, 123

L.Ed.2d 338 (1993).


### B. SECTION 1983 CLAIMS

9. Ms. Lee's second cause of action claims that the Defendant Hartford Public Schools

violated her rights to equal protection of the laws and to due process. The law to be applied to

this claim is the federal civil rights law which provides a remedy for individuals who have been

deprived of their constitutional rights under color of state law. Section 1983 of Title 42 of the

United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of
> any State ... subjects or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights, privileges or
> immunities secured by the Constitution and laws, shall be liable to the party injured in

14

an action at law ... for redress.

42 U.S.C. §1983.

10. To establish a claim under Section 1983, Ms. Lee must establish, by a preponderance of the evidence, each of the following three elements:

1. That the conduct complained of was committed by a person acting under color of state law;

2. That this conduct deprived Ms. Lee of rights, privileged or immunities secured by the Constitution or the laws of the United States; and

3. That the defendants' actions caused injury and the consequent damages sustained by Ms. Lee. I shall now examine each of these elements in greater detail.

11. Section 1983, the law under which Ms. Lee has made this claim, was enacted in 1871. In enacting it, Congress intended to create a remedy as broad as the protections provided by the United States Constitution and United States laws, so that state officials or persons acting under color of state law, or under the authority of state law, could not deprive individuals of their rights under federal law. It was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts. "Acting under color of law" simply means that the acts complained of would not have occurred but for the fact that the person committing them was an official of the state or the city. In this case, it is not disputed that the actions of the defendant were taken while they were acting in their official capacity, and you can therefore find that the individuals were acting under

15

color of law, within the meaning of the statute. Monroe v. Pape, 365 U.S. 167 (1961).

12. Ms. Lee must next prove that those acts caused her to suffer the loss of one or more federal rights. In this case, Ms. Lee has brought two different causes of action under the Civil Rights Act: first, that she has been deprived of equal protection of the laws; and second that she was deprived of her right to due process. These are separate claims which do not depend on each other, and which you must evaluate separately. Ms. Lee may recover under one of them, both of them, or neither. Naramanchi v. Board of Trustees of Connecticut State University, 850 F.2d 70 (2nd Cir. 1988).

### 1. EQUAL PROTECTION CLAIM

13. The equal protection clause of the fourteenth amendment to the United States Constitution provides that no state, or in this case, no municipality or municipal official, shall "deny to any person within its jurisdiction the equal protection of the laws." Fourteenth Amendment, United States Constitution.

14. The equal protection clause essentially requires that the government treat all similarly situated people alike. Harlen Associates v. Mineola, 273 F.3d 494, 499 (2nd Cir. 2001); City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982); Mahone v. Addicks Utility District of Harris County, 836 F.2d 921, 932 (5th Cir. 1980).

15. Equal protection of the law requires not only that laws be equal on their face, but

16

also that they be executed so as not to deny equality. The unequal application of state or municipal laws, regulations, rules or practices may act as a denial of equal protection. Yick Wo v. Hopkins, 188 U.S. 356, 6, S. Ct. 1064, 30 L.Ed.2d 220 (1886); Mahone v. Addicks Utility District of Harris County, 836 F.2d 921, 932 (5th Cir. 1988).

16. To show an equal protection violation, Ms. Lee must prove that the defendant's actions towards her constituted an uneven or erroneous application of laws or regulations, and the uneven treatment was purposeful or intentional, or that the different treatment was based on impermissible considerations such as an intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure her. In this case, those actions include Dr. Mahoney wrongfully accusing Ms. Lee of failing to perform her job duties, loading her with an unreasonable burden of administrative and clerical tasks even when she did not have adequate secretarial support, then unfairly or falsely scrutinizing and criticizing her job performance, magnifying or fabricating performance deficiencies, accusing her of lying, treating her in an unprofessional, insulting and abusive manner, giving her unreasonably poor performance evaluations, and deliberately interfering with her good relationships with other administration, staff and the school community. The actions also include the Hartford Public Schools' failure to investigate her complaint thoroughly. Ms. Lee can prevail if she proves, by a preponderance of the evidence, that Dr. Mahoney did take these actions without any rational basis or legitimate government purpose, or with a malicious or bad faith intent to injure her. Cobb v. Pozzi, 352

17

F.3d 79, 100 (2nd Cir. 2003); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000);

Powell v. Power, 436 F.2d 84, 88 (2d Cir. 1970); Burt v. City of New York, 56 F.2d 791, 791-

92 (2d Cir. 1946); Rodrigues v. Village of Larchmont, New York, 608 F. Supp. 467, 473

(S.D.N.Y. 1985); Ossler v. Village of Norridge, 557 F. Supp. 219, 224 (N.D. Ill. 1983); Lehr. v.

Robertson, 463 U.S. 248, 265, 103 S. Ct. 2985, 77 L.Ed.2d 614 629 (1983); LeClair v. Saunders,

627 F.2d 606, 610-611 (2d Cir. 1980).

17. Ms. Lee can also prove an equal protection violation by the Hartford Public

Schools by showing that she was treated differently than other similarly situated individuals, for

reasons which are not rationally related to a legitimate government interest. In this case, Ms. Lee

has claimed that she was treated differently from other administrators both while Dr. Mahoney

supervised her, by Dr. Mahoney, and later by Mr. Amato and Mr. Stacy, because she had

complained about Dr. Mahoney's treatment. Such conduct, if it occurred, would violate the

equal protection clause. City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432,

439-40, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985); Mahoney v. Addicks Utility District of Harris

County, 836 F.2d 921, 933 (5th Cir. 1988).

18. Ms. Lee also claims that the Hartford Public Schools is responsible for Dr.

Mahoney's wrongful conduct towards her. The Hartford Public Schools may be held responsible

for this conduct of Dr. Mahoney if the individuals with the highest authority to direct her conduct

were made aware of wrongful conduct of Dr. Mahoney, but did nothing to correct or prevent

18

such conduct, or to protect Ms. Lee from it, but instead ratified and sanctioned it and took no

action to train Dr. Mahoney in more appropriate treatment of administrative employees. Ms. Lee

has presented evidence that Anthony Amato, the Superintendent of Schools, had the highest

authority to hire and fire employees, to investigate complaints of harassment or discrimination,

and to train administrators. He delegated some of that authority to Robert Stacy, the Director of

Human Resources. Clara Lee made them aware of Dr. Mahoney's conduct and the reason she

believed it was wrongful. She has presented evidence to prove to you that Mr. Amato and Mr.

Stacy ignored the information she provided, and they ignored her history of thirty years of

excellent performance evaluations. It is your job to evaluate that evidence and determine

whether Ms. Lee has proved her claim by a preponderance of the evidence.

According to Ms. Lee, Mr. Amato did not make any effort to determine whether Dr.

Mahoney's treatment of her was appropriate, in spite of evidence that it was not. He simply left

it up to the Principal, meaning Dr. Mahoney, to evaluate whether her performance justified the

treatment under all the circumstances, and he refused to make any independent evaluation of the

circumstances. He was deliberately indifferent to whether Ms. Lee's constitutional rights were

violated. He acknowledges that he was ultimately responsible for seeing that her complaint of

harassment and discrimination was thoroughly investigated. But he took no action; he delegated

that duty to Mr. Stacy.

Ms. Lee asserts that Mr. Stacy did not thoroughly investigate Ms. Lee's complaint of

19

harassment. He merely assigned someone to review her written statement with her, to make a show of investigating her complaint, but neither he nor Mr. Amato actually analyzed the assertions Dr. Mahoney had made, to determine whether Ms. Lee was right, and Dr. Mahoney had been merely harassing Ms. Lee.

If you find these facts to be true, then the Hartford Public Schools is liable for any damages caused by Dr. Mahoney's conduct, because Mr. Amato and Mr. Stacy had the ultimate authority to act on complaints of harassment and determine what action to take. Mandell v. County of Suffolk, 316 F.3d 368 (2nd Cir. 2003); St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988); Jett v. Dallas Independent School District, 491 U.S. 701, 737-38 (1989).

Even if the Hartford Public Schools took these actions because they believed Ms. Lee was a poor performer, if you find that their belief was irrational under the circumstances, because the Hartford Public Schools had failed to investigate her complaint that Dr. Mahoney was unfairly evaluating her and was simply harassing or discriminating against her, then you may find that the Hartford Public Schools violated her right to equal protection. Cobb v. Pozzi, 352 F.3d 79, 100 (2nd Cir. 2003).

19. If you find that the Defendant Hartford Public Schools did violate Ms. Lee's right to equal protection, you may award damages for any lost wages and benefits of employment which resulted from the violation, and also for any pain, suffering, humiliation or mental anguish that Ms. Lee experienced as a consequence of the defendant's conduct. There is no exact standard for

20

fixing the compensation to be awarded for these elements of damages, and no expert testimony need be introduced. Any award you make should be fair and just in light of the evidence presented at trial.

Psychiatric or other medical treatment is not a precondition to recovery. Mental and emotional distress may be proved by Ms. Lee's own testimony corroborated by reference to the circumstances of the alleged misconduct.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Ms. Lee prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. Reiter v. Metropolitan Transportation Authority of New York et al., 2003 U.S. Dist. LEXIS 17391 (S.D.N.Y. 2003); Patrolmen's Benevolent Assoc. v. City of New York, 310 F.3d 43 (2d Cir. 2002).

## 2. DUE PROCESS CLAIM

20. Ms. Lee has also claimed that the defendant violated her right to due process of law. The United States Constitution provides a right to "due process" before any property right can be taken from an individual. Fourteenth Amendment, United States Constitution. You must determine this claim separately from the other claims asserted by the Ms. Lee.

21

21. In order to prove her claim that she was denied due process, Ms. Lee must show, first, that she was deprived of specific rights or benefits. It is not sufficient for her to show that she had an expectation that she would receive a benefit; she must prove that she had a legitimate claim of entitlement to the benefit or right of which she was deprived. Her rights can be established by the terms of a contract, such as a contract for public employment. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2nd Cir. 1995).

Ms. Lee has produced evidence of portions of the Policy and Administrative Manual of the Hartford Public Schools, which was provided to her during her employment. She relies upon the portion of that Manual that includes Personnel policy. She also relies upon statements contained in her union contract, including the statement that there are "rights" under the Administrative Manual which are not to be arbitrated by the union.

A personnel manual provided by an employer in Connecticut can create binding contractual terms, if the employer has not included a specific "disclaimer," or statement that the statements in the manual do not create a binding contract. In this case, Ms. Lee has shown that her employer's manual did not contain such a disclaimer, but included language which expressly set forth that the manual's language may be legally binding. The statements in a manual may give rise to an express or implied contract between the employer and the employee. Finley v. Aetna Life & Cas. Co., 202 Conn. 190 (1987); HPS Policy and Administrative Manual, "The

22

Manual and How to Use It."

22. It is for you to determine whether the written statements of the Hartford Public Schools which Ms. Lee has shown you, were sufficiently clear and specific in providing a right in the employee and an obligation in the Hartford Public Schools, so that Ms. Lee had more than a mere expectancy, but had the rights she asserts. Ms. Lee has asserted that she had a right to employment free from harassment; a right to have her harassment complaint promptly and thoroughly investigated; a right to be free from retaliation for making a complaint of harassment; a right not to be demoted without just cause and an opportunity to present her case why she should not be demoted; and a right to have the Superintendent give careful consideration to her application for promotion to the position of Executive Vice Principal at Hartford High.

23. Ms. Lee asserts that she was not provided an adequate opportunity to be heard on her complaint of harassment and discrimination. She asserts that the administration merely humored her, allowing her to make her statement but making no genuine effort to analyze the documents and facts she presented. Ms. Lee claims that if the Hartford Public Schools administration had carefully reviewed the evidence she put before them, as they had an obligation to do, they would have had to conclude that Dr. Mahoney had unfairly overburdened her with clerical and other lower-level job duties, then magnified or fabricated deficiencies in her performance to make it appear that she was unable or unwilling to perform her job as Executive Vice Principal well.

I charge you that if you find that the Hartford Public Schools had undertaken an

23

obligation to investigate any complaint of harassment promptly and thoroughly, and protect its employees against retaliation, you must determine whether they failed to meet those obligations in such a way that they deprived Ms. Lee of a meaningful opportunity to defend herself against the unjust evaluations and treatment by Dr. Mahoney. If you find that the Hartford Public Schools denied Ms. Lee a meaningful opportunity to be heard on her complaint of harassment, then you may find for the plaintiff on this claim.

24. Ms. Lee also asserts that the Hartford Public Schools did not provide her with adequate notice and an adequate opportunity to be heard before she was demoted. She asserts that in her union contract and the Personnel and Administrative Manual the defendant undertook an obligation to provide equal employment opportunities to its administrators; and not to demote an administrator for making a complaint of harassment or age discrimination. She asserts that before she could be demoted, she was entitled to notice that the administration intended to demote her, and a meaningful opportunity to be heard regarding why she should not be demoted. She asserts that she had no advance notice of this action, and no such hearing, but was summarily told she was demoted and there was no choice of position.

I charge you that if you find that the Hartford Public Schools had undertaken an obligation not to demote an administrator without first providing her with a meaningful opportunity to be heard, you must determine whether they provided Ms. Lee with adequate notice and a meaningful opportunity to state her case why she should not be demoted. If you find that

24

the Hartford Public Schools failed to notify Ms. Lee in advance, that it intended to demote her, and denied her a meaningful opportunity to be heard why she should not be demoted, then you may find for the plaintiff on this claim.

25. Ms. Lee also asserts that the Hartford Public Schools did not provide her with an meaningful opportunity to be considered for the position as Executive Vice Principal of Hartford High. In this claim, Ms. Lee is not claiming that she was entitled to the position, but rather that the Hartford Public Schools had a specific policy and procedure in place for hiring or promoting an employee for such a position, and it was required to adhere to its own policies. Ms. Lee points to the written policy on job descriptions, and the job description for executive vice principal of a high school, and the reasons why those are the minimal qualifications one should have before assuming this role. She asserts that if Dr. Colon had been made aware of her qualifications and her history in the job at Weaver High, and her history with NEASC accreditation, it is likely that he would have selected her for the position.

I charge you that if you find that Clara Lee applied for the position, and that she met the written qualifications, and that the job description made her a qualified applicant, and if you further find that she was entitled to be considered for the position by having the decisionmaker made aware of her application and her qualifications and interview her for the position, but it failed to provide her these rights, then you may find for the plaintiff on her due process claim.

26. As to Ms. Lee's claim that she was deprived of due process when the defendant

25

demoted her, the defendant has argued that she voluntarily left her position as Executive Vice

Principal of Weaver High School, and asked that the defendant transfer her to another available

position. According to the defendant, she cannot make a claim based upon her transfer to Quirk

Middle School because of her action, which they allege was voluntary. Ms. Lee asserts that she

did not voluntarily relinquish her position at Weaver High, but was removed from that position

and demoted. The letter of August 31, 1999, upon which the defendant relies, was written after

the demotion was handed to her as an accomplished fact. Ms. Lee has presented evidence that

she signed the letter only under duress, with the genuine belief that if she did not accept the

demotion without a fight, she would be discharged from her employment of more than thirty

years. I charge you that you must determine, based upon the evidence presented, whether Ms.

Lee has proven, by a preponderance of the evidence, that she was involuntarily removed from her

position as Executive Vice Principal of Weaver High, and demoted without any meaningful

opportunity to present evidence why this action should not be taken. If so, and if you find she

had a right to be heard before such an action was taken, then you may find for the plaintiff on her

due process claim.

27. Similarly, if you find that Ms. Lee had a right to be considered for the opportunity to

be promoted to the position at Hartford High, or for other promotional opportunities after

August, 1999, then you may find for the plaintiff on her due process claim.

28. If you find that the Defendant Hartford Public Schools did violate Ms. Lee's right to

26

due process, you may award damages for any lost wages and benefits of employment which you find, by a preponderance of the evidence, resulted from that violation; and also for any pain, suffering, humiliation or mental anguish that Ms. Lee experienced as a consequence of the defendant's conduct in violating her due process rights. I have instructed you before on the standard for determining these damages, and those standards apply equally to this claim.

## C. BREACH OF CONTRACT

29. In her third claim, Ms. Lee asserts that she had a contract with the Hartford Public Schools, the terms of which were set forth, in part, in the Administrative Manual of the Hartford Public Schools.

The elements of this count are: (1) that Ms. Lee had a contractual relationship with the Hartford Public Schools; (2) that some of the terms of the contractual relationship were either expressly set forth in the Administrative Manual or implied by the statements in that Manual; (3) that the Hartford Public Schools failed to meet its express or implied contractual obligations to Ms. Lee; and (4) that Ms. Lee suffered damages as a result of the Hartford Public Schools' breach of its contractual obligations to her. Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199 (1987).

30. As to the first element, I charge you that this element of this count is established. Ms. Lee did have a contractual relationship with the Hartford Public Schools as a public school

27

administrator. Connecticut law required the defendant to provide Ms. Lee with a written contract

of employment setting forth the terms and conditions of her employment. Conn. Gen. Stat. §10-

151(b).

31. As to the terms of that contractual relationship, Ms. Lee claims that the terms of her

contract were set forth, in part, in the Policy and Administrative Manual of the Hartford Public

Schools, which was provided to her during the course of her employment, and in part in the

agreements with her union, the Hartford Principals' and Supervisors' Association. All

employer-employee relationships involve some type of 'contract' of employment. "There cannot

be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be

working." It is only the terms of the contract that can be subject to dispute. Torosyan v.

Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13 (1995). I charge you that it is

established, for the purposes of this case, that any term you find is clearly set forth as an

obligation of the Hartford Board of Education or the Hartford Public Schools in the agreement

with the Hartford Principals' and Supervisors' Association is a contractual obligation to Ms. Lee.

I charge you further that it is established, for the purposes of this case, that anything that is

clearly and definitely stated in the Policy and Administrative Manual as an assurance that the

Hartford Public Schools will act towards its employees in specific ways, or according to specific

standards, constitutes an express term of Ms. Lee's contract of employment.

Even beyond the express contractual terms, Ms. Lee may prove that there are terms of her

28

contract which are implied by the language of the Manual. It is firmly established that "statements in an employer's personnel manual may ... give rise to an express or implied contract between employer and employee. Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 564 (1984); Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 532 (1999).

The Hartford Public Schools could have protected itself, under the law, from having any term of the Manual become an implied contract term, by following either (or both) of two simple procedures. First, it could avoid language that employees would understand or interpret to mean they had a right -- in other words, they could avoid making clear commitments. Second, they could include a disclaimer in the Manual which states that it does not create contractual terms. If they did either one of these, you would not be permitted to determine that the Manual's terms constituted contractual promises. Finley v. Aetna, *supra*, 202 Conn. at 199 n.5, n.9; Gaudio v. Griffin, 249 Conn. at 535.

Ms. Lee has shown you that this Manual, rather than including a disclaimer of any legally binding contractual terms, in fact included a statement that the terms of the Manual might be legally binding. It is for you to determine whether Ms. Lee could reasonably infer from the Manual, that the Hartford Public Schools promised its employees the contractual terms she claims. These are:

    a. that it would protect her from any form of harassment;

    b. that it would promptly and thoroughly investigate any claim of harassment or

29

discrimination;

c. that it would not permit any retaliation against an employee for making such a
complaint; and

d. that it would carefully consider the qualifications of applicants for promotional
opportunities, including careful consideration of credentials, references, interviews and
evaluation of previous performance.

. If you find that Ms. Lee was expressly promised these terms of employment, or that she
reasonably could infer that these were the terms of her employment based upon the statements in
the Manual, then you should find there was a contract which prohibited the Hartford Public
Schools from permitting Dr. Mahoney to harass her, from retaliating against her for complaining
of harassment and discrimination, or from ignoring her application for promotional positions and
failing to carefully scrutinize her qualifications.

32. If you find that any one of these terms was an express or implied contractual term of
Ms. Lee's employment, then you must consider whether the Hartford Public Schools violated
that term, and whether the violation caused an injury to Ms. Lee. If you find that the Hartford
Public Schools violated any one of the terms of Ms. Lee's contract, then you must find for her on
her breach of contract claim and consider whether she suffered damages as a result of that breach
of contract.

33. Ms. Lee asserts that the defendant violated its own personnel policies and

30

regulations, which were contractual terms, when they failed to provide her any meaningful opportunity to be considered for the position of Executive Vice Principal of Hartford High. Although she was allowed to place her name on a posting list and file a written application, Superintendent Amato failed even to notify the Principal of Hartford High who would be permitted to interview candidates and select one, that Ms. Lee had applied for the position.

Ms. Lee points out, further, that Mr. Amato appointed an individual to the position who lacked the qualifications expressly set forth in the job description, while denying Ms. Lee, who had attained all of those qualifications, any opportunity even to be considered by the hiring principal. She asserts that the terms of the Manual provided a contractual commitment that the Hartford Public Schools would ensure equal employment opportunities for all qualified candidates by the use of job descriptions which included the specific qualifications for the position. She further asserts that this language about job descriptions implied, or created an implied contractual term, that the Hartford Public Schools would consider for each promotional opportunity only those candidates who met the stated qualifications, and would provide an opportunity for each such candidate to be seriously considered for the opportunity. More specifically, Ms. Lee points to the stated qualification for the position as Executive Vice Principal of Hartford High, that a candidate must have at least two years' successful experience as a high school administrator. She asserts that she possessed this qualification, but Ms. LaVoie, who was given the opportunity without any competitive process, did not.

31

If you find that the Hartford Public Schools created, by the terms of the Manual and the other evidence before you, an implied contract that it would seriously consider all candidates who possessed the written job qualifications, and Ms. Lee did possess those qualifications; or if you find an implied contractual term that only those applicants who did possess the written job qualifications would be eligible for promotion to the position; and you further find that they did not fulfill this obligation to Ms. Lee, then you must find for her on her breach of contract claim.

34. If you find for Ms. Lee on her claim for breach of contract, then you may award her damages for the losses she has incurred as a result of that breach of contract. Those losses include any lost wages and benefits of employment she suffered.

RESPECTFULLY SUBMITTED,
PLAINTIFF CLARA LEE

By _____
Judith D. Meyer
Fed Bar No.: CT04976
152 Simsbury Road
P.O. Box 451
Avon, CT 06001-0451
Tel. (860) 678-7711
Fax (860) 677-6832
e-mail: judithdmeyer@igc.org
HER ATTORNEY

## CERTIFICATION

This is to certify that a copy of the foregoing, plus the attached proposed Special Verdict Form, was sent via first-class mail, postage prepaid, this 22nd day of March, 2004, to the following counsel of record:

32

Joseph McQuade, Esq.
Kainen, Escalera & McHale, PC
21 Oak Street
Hartford, CT 06106

Judith D. Meyer

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CLARA LEE,** | : | **DOCKET NO.: 3:02CV819 (PCD)** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **HARTFORD PUBLIC SCHOOLS,** | : | |
| **Defendant.** | : | |

### PROPOSED SPECIAL VERDICT FORM

### A. Retaliation Claim:  Age Discrimination in Employment Act

1. Did the Defendant Hartford Public Schools retaliate against Ms. Lee for making a claim of age discrimination?

YES_____          NO_____

2. If you answered yes to the preceding question, then what is the dollar amount of earnings that Ms. Lee Clara Lee lost because of the defendant's violation of her rights under the Age Discrimination in Employment Act?

$_____

3. Was the violation of Ms. Lee's rights under the Age Discrimination in Employment Act willful, or with reckless disregard for whether it would violate the law?

YES_____          NO_____

34

## **B. Equal Protection Claim**

4. Did the Defendant Hartford Public Schools, through its management employees, treat Ms. Lee less favorably than it treated other employees, due to a malicious or bad faith reason, or for a reason that was not related to a legitimate government interest?

YES_____          NO_____

5. If you answered yes to the preceding question, then what is the dollar amount of earnings that Ms. Lee Clara Lee lost because of the defendant's violation of her rights under the Equal Protection Clause of the United States Constitution?

$_____

6. If you find that Defendant Hartford Public Schools, through its management employees, treated Ms. Lee less favorably than it treated other employees, for a reason that was not related to a legitimate government interest, do you further find that this caused Ms. Lee to suffer mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, damage to her personal and professional reputation and loss of self-esteem?

YES_____          NO_____

7. If you answered yes to the preceding question, then what is the dollar amount of damages that you find is just, fair and adequate to compensate Ms. Lee for the injuries she suffered because of the defendant's violation of her rights under the Equal Protection Clause of the United States Constitution?

$_____

### C.  Due Process Claim

8.  Did the Defendant Hartford Public Schools fail to provide Ms. Lee with all due process,

> a.  When she complained of age discrimination and harassment, and asked that the administration investigate her complaint?

> YES_____          NO_____

> b.  Before demoting her from her position as Executive Vice Principal of Weaver High School?

> YES_____          NO_____

> c.  When she applied for the opportunity to become Executive Vice Principal of Hartford High?

> YES_____          NO_____

9.  If you answered yes to any of Question 8, then what is the dollar amount of earnings that Ms. Lee Clara Lee lost because of the defendant's violation of her right to due process?

$_____

10.  If you answered yes to any part of Question 8, do you further find that this caused Ms. Lee to suffer mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, damage to her personal and professional reputation and loss of self-esteem?

YES_____          NO_____

11.  If you answered yes to the preceding question, then what is the dollar amount of damages that you find is just, fair and adequate to compensate Ms. Lee for the injuries she suffered because of the defendant's violation of her rights under the Equal Protection Clause of the United States Constitution?

$_____

36

### D. Contract Claim

12. Did the Hartford Public Schools breach its contract with Ms. Lee?

YES_____         NO_____

13. If the Hartford Public Schools breached its contract with Ms. Lee, do you find that the breach of her contractual rights resulted in a loss of earnings and benefits of employment?

YES_____         NO_____

13. If you answered yes to the preceding question, then what is the dollar amount of earnings that Ms. Lee lost because of the defendant's violation of her contractual rights?

$_____