97.     Dr. Jose Colon, Principal of HPHS who selected an Executive Vice Principal, was never

        told that Clara Lee had applied for the position.  Colon, Amato testimony.

**DEFENDANT'S RESPONSE:**          **Plaintiff is left to her proof.**

98.     HPS's failure to provide these opportunities violated Ms. Lee's contractual rights.  *See*

        82-97.

**DEFENDANT'S RESPONSE:**          **Disagree.  See, accumulation of admissible evidence.**

99.     HPS management demoted Clara Lee and thereafter restricted her opportunities for

        promotion, because she opposed harassment and age discrimination by Dr. Mahoney, in

        violation of her contractual rights.  Sum of all above evidence.

**DEFENDANT'S RESPONSE:**          **Disagree.  See, accumulation of admissible evidence.**

100.    HPS management was motivated, at least in part, by discriminatory animus against

        Clara Lee because she had opposed age discrimination.  Sum of all above evidence.

**DEFENDANT'S RESPONSE:**          **Disagree.  See, accumulation of admissible evidence.**

101.    HPS management's conduct as alleged was willful or intentional, or defendants acted in

        reckless disregard of Clara Lee's rights.  Mahoney, Stacy, Morris, Henry, Amato, Colon

        testimony.  Exh. 19-23.

**DEFENDANT'S RESPONSE:**          **Disagree.  See, accumulation of admissible evidence.**

102.    As a result of defendants' conduct, Clara Lee has suffered and will continue to suffer

        mental and emotional distress, humiliation, embarrassment, and loss of self-esteem.

Lee testimony.

**DEFENDANT'S RESPONSE:**     **Defendant leaves Plaintiff to her proof regarding her emotional and mental state.  Defendant disagrees that it acted illegally or that it is liable to Plaintiff for any of the relief that she seeks.  See, accumulation of admissible evidence.**

103.    As a result of defendants' conduct, Clara Lee has suffered damage to her personal and professional reputation.  Lee, Macy, Stacy testimony.  Exh. 23.

**DEFENDANT'S RESPONSE:**     **Disagree.  See, accumulation of admissible evidence.**

104.    As a result of defendants' conduct, Clara Lee has suffered loss of earnings and benefits of employment.  Lee, Macy testimony, Exh. 5-7, 101-104.

**DEFENDANT'S RESPONSE:**     **Disagree.  Anticipated testimony of Plaintiff, Stacy, Johnson.**

105.    If Ms. Lee had remained at the level of pay for an Executive Vice Principal from September, 1999 through the end of the 2001-2002 school year, she would have earned an additional $8,263.00 in salary plus approximately $280.00 in additional bonus compensation.  Lee, Macy testimony, Exhibits 5-7 and 101.

**DEFENDANT'S RESPONSE:**     **Agree that, had Plaintiff remained as an Executive Vice Principal at Weaver High School, she would have earned an additional $8,263.00 in salary through the end of the 2001-2002 school year.  As to additional bonus compensation of $280.00, Plaintiff is left to her proof.**

106.    If Ms. Lee had remained at the level of pay for an Executive Vice Principal from September, 1999 through the end of the 2002-2003 school year, she would have earned an additional $16,248.00 in salary plus approximately $380.00 in additional bonus compensation.  Lee, Macy testimony, Exhibits 5-7 and 101.

**DEFENDANT'S RESPONSE:**    **Disagree.  The Executive Vice Principal position was eliminated during the 2002-2003 school year.  Thus, the damages calculation is inaccurate and speculative.  Anticipated testimony of Johnson.**

107.    If Ms. Lee remained at the level of pay for an Executive Vice Principal from September, 1999 through the end of the 2002-2004 school year, she would have earned an additional $27,437.00 in salary plus approximately $605.00 in additional bonus compensation.  Lee, Macy testimony, Exhibits 5-7 and 101.

**DEFENDANT'S RESPONSE:**    **Disagree.  See, response to 106.**

108.    If plaintiff retires at the end of the 2004-2005 school year, and has an average annual salary of $90,924.00 for her highest three earnings years, her annual benefit rate, at 75% of salary, would be $68,193.00.  But if her average annual salary were $102,207.00, as it would be at the EVP level, her annual benefit would then be $76,655.25.  Since plaintiff could expect to collect benefits for approximately twenty years, her total loss of pension benefits is approximately $169,245.00.  Lee, Macy testimony, Exhibits 5-7 and 101.

**DEFENDANT'S RESPONSE:**      Disagree.  <u>See</u>, **Response to 106.  Because Plaintiff has not yet retired, the question of pension benefits is entirely a matter of front pay for resolution by the court and not the jury.**

3.    <u>**Claims of Law**</u>

    a.    <u>ADEA Retaliation Claim</u>

HPS is an employer, as defined under the ADEA at 29 U.S.C. §630.  29 U.S.C. §623(d) makes it unlawful for an employer to take any action against an employee because she made a charge of age discrimination.  A plaintiff does not have to prove that she was correct in her belief that age was a motivating factor;  she need only have a good faith belief that the harassment she experienced was motivated by age-based animosity.  *See,* <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155 (2nd Cir. 1996).  If plaintiff can show that her employer was aware of her complaint of age discrimination, and shortly thereafter disadvantaged her, she can sustain a *prima facie* case of retaliation; it is then incumbent upon the employer to explain its actions.  *Id.*  Even if an employer's action was also motivated by other factors, if the plaintiff's complaint of age discrimination was one of the motivating factors in the adverse action complained of, the plaintiff should prevail in her retaliation complaint.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).

Intent, or motivation, as a causative factor, is seldom admitted, but can be inferred from the circumstances and from the employer's failure to provide a true reason for its action.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  Proof that the defendant's explanation is unworthy of credence is a form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).

**DEFENDANT'S RESPONSE:        Disagree.  Plaintiff's suggested conclusions of law, in addition to being unsupported by the proposed evidence, do not accurately state the law. See, Defendant's Proposed Jury Instructions.  Defendant contests Plaintiff's proposed conclusion that it is the employer at the relevant time.  See, above and Motion for Summary Judgment.**

        b.    Equal Protection Claim

Plaintiff can prevail on an equal protection claim as a "class of one," if she proves that she was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Russo v. Hartford, 158 F.Supp.2d 214, 240 (2001) (citing  Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (in turn citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty., 488 U.S. 336 (1989)).  Unequal application of rules or practices is

a denial of equal protection.  Yick Wo v. Hopkins, 188 U.S. 356 (1886).

As an Executive Vice Principal, Clara Lee was treated differently from any other EVP in the school system, in that she was required to be the primary administrator for a "house" of students, while none of her other administrative functions was removed.  In addition, she was loaded up with clerical tasks ordinarily performed by secretarial staff, at a time when she did not even have a secretary, and ordered to perform the tasks herself rather than delegate them to others.  As a high school administrator, Ms. Lee was treated differently from all other comparable employees when she was demoted to a middle school position five grades lower according to the job classes established by HPS.  There was no rational basis for this treatment.

**DEFENDANT'S RESPONSE:        Disagree.  See, accumulation of admissible evidence.  Moreover, Defendant contends that there is no equal protection claim remaining in this case.  The court ruled, "summary judgment is granted with respect to Plaintiff's equal protection claims surrounding and related to her transfer/demotion and non-selection for the Executive Vice Principal position.  However, to the extent that Plaintiff has alleged equal protection violations based on circumstances not pertaining to these events, Defendant has not met its burden for summary judgment with respect to them, and such claims survive this Ruling."  Based on the recitation of Plaintiff's contentions as to what a jury could rationally find (Ruling at 14), none of the slights Plaintiff allegedly suffers rises to the level of a Constitutional violation under Equal Protection analysis.  Additionally,**

**Plaintiff is unable to establish a custom, practice or policy necessary under <u>Monell</u>.**

    c.    <u>Due Process Claim</u>

Where a benefit is secured by state law, or by contractual terms enforceable under state law, that establishes a property interest in a public employee. <u>Ezekwo v. New York City Health & Hosp. Corp.</u>, 940 F.2d 775, 783 (2d Cir.1991). In the case at bar, the HPS personnel manual provided expressly that HPS would promptly and thoroughly investigate any harassment complaint; that they would not retaliate against her for making such a complaint; and that they would provide her with equivalent opportunities if they sought to transfer her out of her job. In fact, plaintiff's harassment complaint was not the subject of any legitimate effort to determine, in good faith, whether she had been harassed and her supervisor's evaluations were made in bad faith. Plaintiff suffered severe humiliation and emotional distress as she repeatedly set forth the facts to HPS administration, which basically ignored her in violation of her rights under its own policies.

**<u>DEFENDANT'S RESPONSE</u>:    At present, no conclusion of law is stated herein. Moreover, Plaintiff is unable to establish a property right accruing to her, violation of that right by the Defendant or any process that was denied her as a result of such alleged violation. Additionally, Plaintiff is unable to prove a custom, policy or practice necessary to establish liability under <u>Monell</u>. <u>See</u>, <u>Huff v. West Haven Bd. of Ed.</u>, 10 F. Supp. 2d 117, 120 (D. Conn. 1998).**

d.     Contract Claim

The promises, representations and assurances in an employer's personnel manual reflect express contractual terms, if the manual does not include any disclaimer of contractual rights. Finley v. Aetna Life & Cas. Co., 202 Conn. 190 (1987) (reversed in part on other grounds) ("statements in the defendant's personnel manual were of critical relevance to the issue of whether an express contract existed between the defendant and the plaintiff." 202 Conn. 199 (emphasis added). It is a question of fact for the jury to decide, whether an employer's personnel manual gives rise to an express contract. Id. Plaintiff contends that the HPS personnel and administrative policies created contractual terms that HPS would promptly and thoroughly investigate any harassment complaint; that they would not retaliate against her for making such a complaint; and that they would provide her with equivalent opportunities if they sought to transfer her out of her job. As set forth above, they failed to abide by these policies, and their failure and refusal to do so caused plaintiff substantial wage losses and emotional distress.

HPS policies also provided that written job descriptions would govern the qualifications for each position. The defendants violated their personnel policies and regulations when they failed to provide plaintiff any meaningful opportunity to apply for the position of Executive Vice Principal of Hartford High. Although she was allowed to place her name on a posting list and file a written application, Superintendent Amato failed even to notify the hiring principal

that plaintiff had applied for the position.  HPS failed to interview or consider plaintiff for the

position.  Regardless of whether this was motivated by retaliatory animus, it was in

contravention of contractual rights.  Defendants allowed an individual to be hired who lacked

the qualifications expressly set forth in the job description, while denying plaintiff any

opportunity even to be considered by the hiring principal.

**DEFENDANT'S RESPONSE:**        **Disagree.  The relationship between the parties is
governed by a collective bargaining agreement.  No contract was formed between Plaintiff
and Defendant as a result of conversations between Plaintiff and various administrators
employed by the State Board during the relevant period or any Personnel Manual.  <u>See</u>,
Ruling on Motion for Summary Judgment.**

  e. <u>Damages</u>.

  Plaintiff is entitled to backpay and liquidated damages, if the jury finds that HPS

retaliated against her for complaining about age discrimination.  Plaintiff lost wages as a result

of having been demoted to the middle school level.  If she had remained at the high school

level, as did every single other high school administrator whose assignment was changed in

1999, she would have earned higher wages through the current time.  If she proves that her

complaint of age discrimination motivated her demotion, she is entitled to reinstatement into an

equivalent high school-level position with back pay, or, if reinstatement is not feasible, an

award of both back pay and front pay. <u>Hagelthorn v. Kennecott Corp.</u>, 710 F.2d 76 (2nd Cir.

1983);  Johnson v. Al Tech Specialties Steel, 731 F.2d 143 (2nd Cir. 1984).  In addition,

plaintiff will be entitled to liquidated damages when she proves that HPS management was

aware that retaliation for complaining of age discrimination violated federal law; that HPS

management was indifferent to whether its decisions about her employment were based upon

discriminatory evaluations, and acted in a purposeful, deliberate or calculated fashion to

disadvantage her.  Benjamin v. United Merchants, 873 F.2d 41 (2nd Cir. 1989).

   On plaintiff's Section 1983 claims, she is entitled not only to her actual damages, but to

compensatory damages.  Damages in a section 1983 case are generally determined according to

principles derived from the common law of torts.  BD v. DeBuono, 193 F.R.D. 117, 139

(S.D.N.Y. 2000), citing Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306

(1986).

   On her contract claim, plaintiff is entitled not only to her actual wage and benefit losses,

but also to an award of compensatory damages for emotional distress, if the conduct involved

an unreasonable risk of causing emotional injury which might result in illness or bodily harm.

Saporoso v. Aetna Life & Casualty Co., 221 Conn. 356 (1992);  Thames Shipyard Repair Co.

v. Willametz, 37 Conn.Sup. 19, 23 (1978), aff'd at 439 A.2d 948 (1981);  Restatement 2nd

Contracts §463 (1973).

   If plaintiff prevails on her ADEA claim or her Section 1983 claims, she is entitled to an

award of reasonable attorney's fees and costs of this litigation.  29 U.S.C. §626(b) and 42

U.S.C. §1988.

Plaintiff is entitled to an award of pre- and post-judgment interest on any award, in accord with Conn. Gen. Stat. §37-3a; or in accord with 28 U.S.C. §1961; or in accord with the Court's determination of the applicable rate of interest.

**DEFENDANT'S RESPONSE:**        **Disagree.  Plaintiff is not entitled to any of the relief that she seeks from the Defendant.  See, Defendant's Proposed Jury Instructions. Plaintiff is not entitled to any pain and suffering/emotional distress damages for any breach of contract claim that she may prevail upon.  Plaintiff is not entitled to liquidated damages against the Hartford Public Schools as such damages are punitive.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985); Newport v. Facts Concerts, Inc., 453 U.S. 247, 260 n.21 (1981).  If Plaintiff prevails in this case, the court has discretion to award attorneys' fees, costs and interest.**

4.        **Proposed Exhibits**

**Defendant has noted its agreement to a number of the following exhibits on the assumption that the exhibits presented at trial are in substantial conformity with the documents presented in discovery.  In some cases, Defendant has set out the Bates number of the exhibit agreed to.  If the exhibit proposed is not the document identified by Defendant, the parties disagree as to that exhibit.  As to the exhibits on which Defendant**

disagrees, Defendant reserves the right to object to the exhibit on additional grounds, in

the event that the court does not sustain an objection based on the primary ground.

Defendant reserves the right to object to any exhibit based on the evidence actually

offered by Plaintiff at trial.

1.      Life expectancy table from U.S. Dept of Health and Human Services, National Center

for Health Statistics, National Vital Statistics Reports, Vol. 51 No. 3, Dec. 19, 2002.

http://www.cdc.gov/nchs/data/nvsr/nvsr51/nvsr51_03.pdf.

**DEFENDANT'S RESPONSE:**      **Disagree.  Irrelevant, immaterial and speculative.**

**Fed. R. Evid. 402, 403, 601, 701, 802.**

2.      Letter dated July 26, 1967.

**DEFENDANT'S RESPONSE:**      **Agree.**

3.      EEOC "Right to Sue" letter.

**DEFENDANT'S RESPONSE:**      **Disagree.  Irrelevant and prejudicial.  Rules 402, 403.**

**For purposes of trial, Defendant would be willing to stipulate that Plaintiff has exhausted**

**her administrative remedies with respect to her ADEA claim.**

4.      HPS Policy and Administrative Manual.

**DEFENDANT'S RESPONSE:**      **Agree.**

5.      Agreement between the Hartford Board of Education of the City of Hartford and the

Hartford Principals' and Supervisors' Association ("HPSA"), July 1, 1996-June 30,

1999.

**DEFENDANT'S RESPONSE:**    **Agree.**

6.    Agreement between the State Board of Trustees for the Hartford Public Schools of the City of Hartford and the HPSA, July 1, 1999-June 30, 2002.

**DEFENDANT'S RESPONSE:**    **Agree.**

7.    Agreement between the State Board of Trustees for the Hartford Public Schools of the City of Hartford and the HPSA, July 1, 2002-June 30, 2005.

**DEFENDANT'S RESPONSE:**    **Agree.**

8.    Notice of upgrade to M.A. + 30 (LEE 000102)

**DEFENDANT'S RESPONSE:**    **Agree.**

9.    Letter dated August 17, 1995, notifying Ms. Lee of her permanent appointment as EVP of Weaver High.

**DEFENDANT'S RESPONSE:**    **Agree.**

10.    Performance Evaluation for Clara Lee, school year 1987-1988.

**DEFENDANT'S RESPONSE:**    **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

11.    Performance Evaluation for Clara Lee, school year 1988-1989.

**DEFENDANT'S RESPONSE:**    **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

12.    Performance Evaluation for Clara Lee, school year 1995-1996.

**DEFENDANT'S RESPONSE:**    **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

13.     Performance Evaluation for Clara Lee, school year 1996-1997.

**DEFENDANT'S RESPONSE:     Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

14.     Performance Evaluation for Clara Lee, school year 1999-2000.

**DEFENDANT'S RESPONSE:     Agree.**

15.     Performance Evaluation for Clara Lee, school year 2000-2001.

**DEFENDANT'S RESPONSE:     Agree.**

16.     Performance Evaluation for Clara Lee, school year 2001-2002.

**DEFENDANT'S RESPONSE:     Agree.**

17.     Performance Evaluation for Clara Lee, school year 2002-2003.

**DEFENDANT'S RESPONSE:     Agree.**

18.     Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests for

Production of Documents 3 ("plt n removed from pos as EVP, vol'y acceptd

reassignmt"), 4 (Stacy s/w Amato re CL, summer '99), 5.

**DEFENDANT'S RESPONSE:     Disagree.  Overbroad.  Irrelevant.  Fed. R. Evid. 402,**

**403.  Impeachment material.**

19.     Deposition of Christine Mahoney pp. 22-36, 51, 62-63, 65-70, 76, 78-94, 96-110, 113-

68, 171-218, 226-32, 235-37, 239, 248-55, 257, 259-63, 273, 280-86, and exhibits

referenced therein.

**DEFENDANT'S RESPONSE:     Disagree.  Best Evidence Rule.  If Mahoney testifies in**

**person, there is no basis for admitting the deposition into evidence.**

20.    Deposition of Anthony Amato, pp. 26-43, 62-66, 80-91, 98-100, 105-113, 117-32, 141-

49, 151-56, and exhibits referenced therein.

**DEFENDANT'S RESPONSE:**        **In the event that Amato testifies in person, disagree**

**for reasons stated above.  If Amato is unavailable or does not testify in person, agree as to**

**the entire transcript.**

21.    Deposition of Robert Henry pp.  6-9, 11-13, 16, 19, 26-34, 41-52, 54, 57-58, 63-65, 73-

79, 85-87, and exhibits referenced therein.

**DEFENDANT'S RESPONSE:**        **Disagree.  Best Evidence Rule.  If Henry testifies in**

**person, there is no basis for admitting the deposition into evidence.**

22.    Deposition of Robert Morris pp. 17-33, 38-48, 72-76, 78-99- and exhibits referenced

therein.

**DEFENDANT'S RESPONSE:**        **Disagree.  Best Evidence Rule.  If Morris testifies in**

**person, there is no basis for admitting the deposition into evidence.**

23.    Deposition of Robert Stacy Vol. I pp. 14, 16-46, 48-51, 54-58, 63-64, 72-77, 82-87, 89-

91, 95, 98-100, 103-105, 107-112, 146-47, 168; Vol. II pp. 4-5, 8-9, 10-12, 17, 26-32,

37, 39-42, 54-55, 57, 60-63, 64-67, and exhibits referenced therein.

**DEFENDANT'S RESPONSE:**        **Disagree.  Best Evidence Rule.  If Stacy testifies in**

**person, there is no basis for admitting the deposition into evidence.**

24.    Deposition of Ann-Marie DeGraffenreidt pp. 12-14, 20-24, 34-36, 40-44, 51-52, 55-56,

and exhibits referenced therein.

**DEFENDANT'S RESPONSE:**    **Disagree.  Best Evidence Rule.  If DeGraffenreidt**

**testifies in person, there is no basis for admitting the deposition into evidence.**

25.    Deposition of Gail Johnson pp. 12-15, 24-28, and exhibits referenced therein.

**DEFENDANT'S RESPONSE:**    **Disagree.  Best Evidence Rule.  If Johnson testifies in**

**person, there is no basis for admitting the deposition into evidence.**

26.    Final Evaluation for Clara Lee for school year 1997-98

**DEFENDANT'S RESPONSE:**    **Agree.**

27.    Informal Grievance of 1998 Final Evaluation, dated July 13, 1998

**DEFENDANT'S RESPONSE:**    **Agree.**

28.    Memorandum "To Whom It May Concern" dated Sept. 24, 1998, regarding removal of

1997-98 annual evaluation (C.Lee 140)

**DEFENDANT'S RESPONSE:**    **Agree.**

29.    Undated letter from Dr. Mahoney to June Bernabucci regarding Thanksgiving Day

game at Dillon Stadium

**DEFENDANT'S RESPONSE:**    **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

30.    Performance Plan for 1998-99 School Year for Clara Lee

**DEFENDANT'S RESPONSE:**    **Agree (LEE 262-268).**

31.     Memorandum to Clara Lee from Dr. Mahoney dated September 14, 1998, regarding

      Student Assignment

**DEFENDANT'S RESPONSE:**      **Agree (C. Lee 339).**

32.     Memorandum to Dr. Mahoney from Clara Lee dated Sept. 18, 1998 regarding Written

      Procedures for A-E Grade 9 Students

**DEFENDANT'S RESPONSE:**      **Agree (C. Lee 341).**

33.     Memorandum to Dr. Mahoney from Clara Lee dated Sept. 18, 1998, re Staff Policy

      Manual

**DEFENDANT'S RESPONSE:**      **Agree (C. Lee 340).**

34.     Memorandum to Clara Lee from Dr. Mahoney dated October 22, 1998, regarding

      Building Rental - Scheduled Activities

**DEFENDANT'S RESPONSE:**      **Agree (C. Lee 323).**

35.     Memorandum to Clara Lee from Dr. Mahoney dated Nov. 5, 1998, regarding police

      coverage (C.Lee 438)

**DEFENDANT'S RESPONSE:**      **Agree.**

36.     Memorandum to Dr. Mahoney from Clara Lee dated Nov. 19, 1998 regarding staff keys

      (C.Lee 433)

**DEFENDANT'S RESPONSE:**      **Agree.**

37.     Final Evaluation Report - Progress Conference, 12/10/98

**DEFENDANT'S RESPONSE:**        **Agree (LEE 221-222).**

38.    Note dated Dec. 1, 1998 from Connie Pruitt to Belinda, with handwritten notes (C.Lee

    405)

**DEFENDANT'S RESPONSE:**        **Disagree.  Irrelevant.  Authentication.  Fed. R. Evid.**

**402, 403, 901.**

39.    Memorandum to Clara Lee from Dr. Mahoney dated Dec. 11, 1998 re CAPT materials

**DEFENDANT'S RESPONSE:**        **Agree (C. Lee 427).**

40.    Memorandum from Clara Lee to Dr. Mahoney dated December 12, 1998, requesting

    permanent secretary.

**DEFENDANT'S RESPONSE:**        **Agree (C. Lee 446).**

42.    Memorandum from Dr. Mahoney to Clara Lee dated Jan. 4, 1999 re staff attendance

    (C.Lee 388)

**DEFENDANT'S RESPONSE:**        **Agree.**

43.    Memorandum from Clara Lee to Dr. Mahoney dated Jan. 8, 1999 re staff attendance

    (C.Lee 384)

**DEFENDANT'S RESPONSE:**        **Agree.**

44.    Memorandum from Clara Lee to Dr. Mahoney dated Jan. 13, 1999, requesting a

    meeting as a first step in an informal grievance regarding Article 12 Section A

**DEFENDANT'S RESPONSE:**        **Disagree.  Immaterial.  Irrelevant.  Fed. R. Evid. 402,**

**403.**

45.     Memorandum from Dr. Mahoney to Clara Lee dated Jan. 21, 1999 regarding request for

        a meeting

**DEFENDANT'S RESPONSE:**     **Disagree. Irrelevant. Fed. R. Evid. 402, 403.**

46.     Memorandum from Dr. Mahoney to Clara Lee dated January 25, 1999 re Instructions

        for Substitute Teachers (C. Lee 386)

**DEFENDANT'S RESPONSE:**     **Agree.**

47.     Memorandum from Dr. Mahoney to Clara Lee regarding security coverage at the UTC

        Center (C.Lee 387)

**DEFENDANT'S RESPONSE:**     **Agree.**

48.     Memorandum from Clara Lee to Dr. Mahoney dated Jan. 30 or Feb. 2, 1999, requesting

        a meeting as part of an informal grievance regarding Article 12 Section A

**DEFENDANT'S RESPONSE:**     **Disagree. Immaterial. Irrelevant. Fed. R. Evid. 402,**

**403.**

49.     Memorandum to Clara Lee from Dr. Mahoney dated Feb. 4, 1999 regarding Student

        Attendance

**DEFENDANT'S RESPONSE:**     **Agree (C. Lee 324).**

50.     Memorandum from Clara Lee to Dr. Mahoney dated March 2, 1999 regarding Student

        Attendance (C.Lee 355)

**DEFENDANT'S RESPONSE:**        **Agree.**

51.    Memoranda (3) from Clara Lee to Dr. Mahoney, dated March 18, 1999, regarding

demanded completion of tasks and obstacles to completion (C.Lee 399-401)

**DEFENDANT'S RESPONSE:**        **Agree.**

52.    Memoranda (2) to Clara Lee from Dr. Mahoney dated March 19, 1999 regarding Staff

Attendance and School Evacuation Plan (C.Lee 402 and 403)

**DEFENDANT'S RESPONSE:**        **Agree.**

53.    Letter to Rosa Williams from Robert Stacy dated March 31, 1999

**DEFENDANT'S RESPONSE:**        **Agree.**

54.    Memorandum to Clara Lee from Dr. Mahoney dated January 22, 1999 regarding

Arrangements for Martin Luther King Birthday Ceremonies

**DEFENDANT'S RESPONSE:**        **Agree (C. Lee 373-374).**

55.    Memorandum to Robert Morris from Clara Lee dated January 25, 1999, regarding Use

of the Auditorium

**DEFENDANT'S RESPONSE:**        **Agree (C. Lee 371-372).**

56.    Grievance Report Form and Record dated Feb. 10, 1999, submitted by Clara Lee.

**DEFENDANT'S RESPONSE:**        **Disagree.  Immaterial, Irrelevant.  Fed. R. Evid. 402,**

**403.**

57.    Memorandum to Dr. Mahoney from Clara Lee dated March 5, 1999 regarding staff

attendance (C.Lee 357)

**DEFENDANT'S RESPONSE:**        **Agree (LEE 256-260).**

58.    Final Evaluation Report - Progress Conference, 5/3/99

**DEFENDANT'S RESPONSE:**        **Agree.**

59.    Memorandum from Dr. Mahoney to Clara Lee dated May 4, 1999 regarding bus lists

(C.Lee 325)

**DEFENDANT'S RESPONSE:**        **Agree.**

60.    Memorandum to Dr. Mahoney from Clara Lee dated May 8, 1999 regarding bus lists

(C.Lee 352)

**DEFENDANT'S RESPONSE:**        **Agree.**

61.    Memorandum from Clara Lee to Elaine McKim dated May 11, 1999 regarding Weaver

High bus lists (C.Lee 353)

**DEFENDANT'S RESPONSE:**        **Agree.**

62.    Memorandum to Dr. Mahoney from Clara Lee dated May 12, 1999 re Bus Lists (C.Lee

408)

**DEFENDANT'S RESPONSE:**        **Agree.**

63.    Memorandum to Dr. Mahoney from Clara Lee dated May 15, 1999, Addendum to

Progress Conference

**DEFENDANT'S RESPONSE:**        **Agree (LEE 250-254).**

64.     Grievance Report Form Step 2 Grievance submitted by Clara Lee dated 5/20/99.

**DEFENDANT'S RESPONSE**:     **Disagree.  Immaterial, Irrelevant.  Fed. R. Evid. 402,**

**403.**

65.     Memorandum from Dr. Mahoney to Clara Lee, regarding Parent Concern for AP

        Course Offerings, dated June 7, 1999

**DEFENDANT'S RESPONSE**:     **Agree (LEE 240).**

66.     Memorandum from Clara Lee to Dr. Mahoney, dated June 4, 1999 regarding Parent

        Concern for AP Course Offerings, with Dr. Mahoney's handwritten notes on it

**DEFENDANT'S RESPONSE**:     **Agree (LEE 241).**

67.     Memorandum to The Weaver Staff from Clara Lee regarding End of Year Procedures,

        dated June 22, 1999

**DEFENDANT'S RESPONSE**:     **Agree (LEE 352; C. Lee 15).**

68.     Memorandum to All Teachers from Dr. Mahoney regarding End of Year Procedures,

        dated June 22, 1999

**DEFENDANT'S RESPONSE**:     **Agree (LEE 350-351).**

69.     Memorandum to All Staff from Clara Lee, dated January 4, 1999, regarding First

        Semester Exam Schedule & Procedures

**DEFENDANT'S RESPONSE**:     **Agree (LEE 355-356; C. Lee 18-19).**

70.     Memorandum to All Staff from Dr. Mahoney, dated January 12, 1999, regarding First

Semester Exam Schedule & Procedures

**DEFENDANT'S RESPONSE:** **Agree (LEE 354; C. Lee 17).**

71.  Memorandum from Dr. Mahoney to Clara Lee, undated, regarding Exam Schedule

(C.Lee 16)

**DEFENDANT'S RESPONSE:** **Agree.**

72.  Final Evaluation Report - Progress Conference, 6/9/99

**DEFENDANT'S RESPONSE:** **Agree (LEE 276-279).**

73.  Memorandum from Clara Lee dated June 9, 1999 re Final Evaluation Conference

**DEFENDANT'S RESPONSE:** **Agree (C. Lee 194).**

74.  Memorandum to "Whom It May Concern" from Clara Lee, dated 6/30/99, regarding

Addendum to Final Evaluation Report Conference

**DEFENDANT'S RESPONSE:** **Agree (LEE 280-285).**

75.  Observation report dated 4/29/99 regarding teacher "MJ/DB," who was previously

suspended during the 1998-1999 school year, possibly with name redacted.

**DEFENDANT'S RESPONSE:** **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

76.  Evaluation Report dated 5/28/99 regarding MJ/DB.

**DEFENDANT'S RESPONSE:** **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

77.  Memorandum from MJ/DB to Clara Lee dated May 28, 1999 re "ADDENDUM -

CHRISTINE MAHONEY 4/29/99

**DEFENDANT'S RESPONSE:**          **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

78.     Observation Report dated 5/27/99 regarding MJ/DB.

**DEFENDANT'S RESPONSE:**          **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

79.     Observation Report dated 12/17/98 regarding MJ/DB.

**DEFENDANT'S RESPONSE:**          **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

80.     Observation Report dated 9/21/98 regarding MJ/DB.

**DEFENDANT'S RESPONSE:**          **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

81.     Undated Memorandum to Clara Lee from Dr. Mahoney regarding Evaluation of
        Teachers (C.Lee 60)

**DEFENDANT'S RESPONSE:**          **Agree.**

82.     Memorandum to Clara Lee from Dr. Mahoney dated June 7, 1999 re Evaluation of
        Teachers

**DEFENDANT'S RESPONSE:**          **Agree (LEE 239).**

83.     Memorandum from Clara Lee to Dr. Mahoney dated 11 June, 1999, regarding "Your
        Memo of June 7, 1999"

**DEFENDANT'S RESPONSE:**          **Agree (LEE 238).**

84.     Memorandum to Christine Mahoney from Clara Lee dated June 4, 1999, regarding
        Evaluation of Teachers, with Dr. Mahoney's handwritten comments on it.

**DEFENDANT'S RESPONSE:**          **Agree (LEE 242).**

85.     Letter to Neil Macy from Robert Stacy dated June 11, 1999 re Clara Lee Grievance

**DEFENDANT'S RESPONSE:**     **Agree.**

86.     Memorandum to Robert Stacy from Clara Lee dated July 23, 1999, regarding additional

requested information relating to grievances

**DEFENDANT'S RESPONSE:**     **Agree (C. Lee 314-317).**

87.     Memorandum to Robert Stacy from Clara Lee dated July 26, 1999, regarding packet of

information relating to grievances

**DEFENDANT'S RESPONSE:**     **Agree (C. Lee 318).**

88.     Memorandum to Robert Stacy from Clara Lee relating to "Grievance Hearing - July

Meeting"

**DEFENDANT'S RESPONSE:**     **Agree (C. Lee 11).**

89.     Time line graphic showing actions taken by Dr. Mahoney and criticisms of Clara Lee.

**DEFENDANT'S RESPONSE:     Disagree. Irrelevant. Authentication. Additionally,**

**defense counsel cannot agree to the admissibility of this chart without seeing it and having**

**sufficient time to examine its contents.**

90.     Letter dated August 25, 1999 re age discrimination investigation finding.

**DEFENDANT'S RESPONSE:**     **Agree (LEE 226).**

91.     Letter dated August 30, 1999 from Neil Macy to Ann-Marie DeGraffenreidt requesting

a copy of an investigation report

**DEFENDANT'S RESPONSE:**     **Agree.**

92.     Letter dated August 31, 1999 regarding Mr. Stacy discussing next placement with Neil

Macy, signed by Clara Lee.

**DEFENDANT'S RESPONSE:**     **Agree (LEE 432).**

93.     Letter dated August 31, 1999 confirming reassignment of Clara Lee to Quirk Middle

School, signed by Robert Stacy.

**DEFENDANT'S RESPONSE:**     **Agree (LEE 225).**

94.     Agreement between Hartford Board of Trustees and Hartford Principals' &

Supervisors' Association regarding reassignments of administrators to new positions,

dated September 1, 1999, signed by Baxter Atkinson and Robert Stacy.

**DEFENDANT'S RESPONSE:**     **Agree (LEE 375).**

95.     Administrator Application from Norma LaVoie for position as Executive Assistant

Principal

**DEFENDANT'S RESPONSE:**     **Disagree.  Irrelevant.  Fed. R. Evid. 402, 403.**

96.     Memorandum from Robert Stacy to Clara Lee, dated April 4, 2002, regarding

Grievance by Clara Lee

**DEFENDANT'S RESPONSE:**     **Disagree.  Irrelevant, prejudicial.  Discusses possible**

**settlement and CHRO proceedings.  Fed. R. Evid. 402, 403, 408.**

97.     Posting for Vacancy #815, Executive Vice Principal, HPHS

**DEFENDANT'S RESPONSE:**     **Disagree. Irrelevant. Fed. R. Evid. 402, 403.**

98.    Posting for Vacancy #842, Executive Vice Principal, HPHS

**DEFENDANT'S RESPONSE:**     **Agree (LEE 371).**

99.    Job Description for Executive Vice Principal for HPS, dated "Rev. 10/27/99"

**DEFENDANT'S RESPONSE:**     **Agree (LEE 430-431).**

100.    Letter to Neil Macy from Robert Stacy regarding Executive Vice Principal Position at HPHS

**DEFENDANT'S RESPONSE:**     **Agree (LEE 478).**

101.    Chart showing salary and bonus loss each year, plus cumulative losses.

**DEFENDANT'S RESPONSE:**     **Disagree. In short, defense counsel cannot agree to the admissibility of this chart without seeing it and having sufficient time to examine its contents. Given the fact that the Executive Vice Principal position was eliminated during the 2002-2003 school year, Defendant may have objections as to its accuracy.**

102.    State of Connecticut Teachers' Retirement System Member Statement of benefits.

**DEFENDANT'S RESPONSE:**     **Disagree. Irrelevant, prejudicial and outside of the realm of the jury. Any issues of front pay, including Plaintiff's retirement benefits are the province of the court. Fed. R. Civ. P. 402, 403; <u>see also</u>, Motion in Limine.**

103.    State of Connecticut Teachers' Retirement System Retirement Percentage Chart

**DEFENDANT'S RESPONSE:**     **Disagree. Irrelevant, prejudicial and outside of the**

realm of the jury.  Any issues of front pay, including Plaintiff's retirement benefits are the province of the court.  Fed. R. Civ. P. 402, 403; <u>see also</u>, Motion in Limine.

104.    Chart showing pension loss.

<u>**DEFENDANT'S RESPONSE**</u>:        **Disagree.  Irrelevant, prejudicial and outside of the realm of the jury.  Any issues of front pay, including Plaintiff's retirement benefits are the province of the court.  Fed. R. Civ. P. 402, 403; <u>see also</u>, Motion in Limine.  In addition, Defendant cannot agree to the admissibility of a chart before seeing it and having an opportunity to examine and verify its contents.**

**5.        <u>Witnesses and Summary of Testimony</u>**

1.        <u>Clara Lee</u>

Clara Lee will testify regarding her age, educational and employment history, including her rise, by increments, from teacher to Executive Vice Principal ("EVP") for HPS and her very good to excellent performance evaluations in every year other than her two years with Dr. Mahoney.  She will discuss the job duties she performed as EVP, and her involvement with a third generation of students and families she taught or worked with, throughout her history in the Weaver High School community.

She will discuss her experience with Dr. Christine Mahoney during the first year Dr. Mahoney was Principal at Weaver High School, and her distress at receiving first poor evaluation, without ever having had any notice of a claimed deficiency and without ever having

28

had any goals articulated.  She will discuss her first grievance and the result.

Ms. Lee will discuss the new lower-level job duties assigned by Dr. Mahoney, suddenly near the start of the 1998-99 school year, the loss of her secretary (and former student) shortly thereafter, the failure and refusal to provide adequate clerical support, and the unjust accusations of inadequate or improper performance.  She will testify to her efforts to develop a working relationship with Dr. Mahoney and Dr. Mahoney's rebuff of her efforts.  She will discuss the new and additional tasks Dr. Mahoney kept burdening her with, and Dr. Mahoney's constant demands that multiple tasks must be completed in unreasonably short time spans with inadequate resources.  She will testify to the problems this created in fulfilling her duties as EVP.  She will explain why she came to suspect that age discrimination was motivating Dr. Mahoney's irrational and unfair conduct towards her.  She will describe the escalation of Dr. Mahoney's demands and accusations, after she attempted to have informal meetings, and most especially after she made a complaint of harassment and age discrimination.

Ms. Lee will discuss her interactions with other HPS administrators and with Dr. Mahoney.  This will include all of their interactions during the 1997-98 school year and the 1998-99 school year; the evaluation reports Dr. Mahoney issued; her experience of other personnel at Weaver distancing themselves when Dr. Mahoney was present;  and her efforts to obtain assistance from HPS administration with the problems she experienced with Dr. Mahoney.  She will further discuss her experience with Dr. Mahoney's interactions with

students, parents and other members of the Weaver High staff and community.

Ms. Lee will discuss what prompted her to seek assistance, unsuccessfully, from HPS administration and from her union, and ultimately to file a complaint of harassment and age discrimination, and the response to her complaints of harassment and age discrimination and her other efforts to obtain intervention.

Ms. Lee will testify to the meetings she had with Mr. Amato and Mr. Stacy in August, 1999, the humiliation she had just suffered at Weaver High School before her colleagues, and the reasons she signed the letter dated August 31, 1999. She will describe her current job and compare it to her position at Weaver High School. She will discuss her applications for other available positions.

Ms. Lee will testify to her damages, including the salary and bonus levels for different positions in HPS administration, and the pension benefits she is earning. She will describe the mental and emotional distress, humiliation, embarrassment and loss of self-esteem she has suffered as a result of HPS's treatment.

Ms. Lee will also discuss the administrative prerequisites for bringing this court action, if necessary.

    2.    <u>Dr. Neil Macy</u>

Dr. Macy will testify regarding his background as a teacher and administrator for HPS and his experience with disputes over evaluations of administrators. He will describe his

experience representing Clara Lee regarding reports written by Dr. Mahoney and Ms. Lee's complaints of harassment and discrimination. Specifically, he will testify that in completing the 1997-98 evaluation report, Dr. Mahoney had violated many of the standards set forth in the Evaluation Document for Hartford Public Schools administrators, and also violated good school administrative practices, and why it strongly appeared to him that her evaluation was in bad faith and motivated by some improper purpose. He will testify that he pointed these problems out to Robert Stacy at the time, and that he pointed out to Mr. Stacy that so complete a violation of the due process protections in the evaluation protocol gave a very strong appearance of prejudice and, at a minimum, justified some investigation into Dr. Mahoney's poor management and inappropriate treatment of Ms. Lee. Dr. Macy will further testify to HPS procedures after such an agreement. He will testify that Robert Stacy refused to consider the substance of the evaluation; because Dr. Mahoney had failed to follow the proper procedures, he noted the evaluation had to be discarded in its entirety, and he would not deal with the substantive issues that were raised, which left Ms. Lee with no further opportunity to challenge this treatment under the HPSA contract procedures.

Dr. Macy will describe efforts in which he assisted Clara Lee, in the fall of the 1998 - 1999 school year, and throughout that school year, in several attempts to have a central office administrator intervene to help her develop a better working relationship with Dr. Mahoney, and to remove inaccurate or unfair evaluation statements, and the lack of an appropriate

response from HPS.  He will testify to the harassment and age discrimination complaint he assisted Ms. Lee in filing, his efforts to persuade HPS to investigate it more thoroughly, his efforts to get copies of any investigative notes or reports, and the failure of HPS to provide any evidence they had done anything other than discuss the matter with Ms. Lee.

Dr. Macy will further testify to the meeting in August, 1999, when Mr. Stacy told Ms. Lee she was demoted and assigned to Quirk Middle School as a Vice Principal.  He will testify that he was involved in the meetings Mr. Stacy held with other HPS High School administrators at the time, in which their school assignments were changed in what HPS described as a reorganization; and he will explain that only Clara Lee, and no other administrator whose assignment was changed, was demoted to a lower-level position.

Dr. Macy will testify to the pattern of hostility and retaliatory conduct he observed in Anthony Amato, toward any school administrator who objected to his actions or the actions of any supervisor.

Dr. Macy will also discuss terms of the HPSA agreements, pay and pension benefits, and the administrative policies for HPS.

3.     Candice Cohens

Ms. Cohens will testify about her employment as Assistant to the Executive Assistant at Weaver High, performing secretarial duties for the EVP.  She will describe the physical work place, and the difficulty she experienced when Dr. Mahoney assigned the primary

administrative functions for a "house" of students to Ms. Lee, including completing records of attendance of students early in each school day and responding to parents' requests for early dismissals, etc.  She will discuss the usual protocol when she required training in a new secretarial function, and how this matter was handled in the fall of 1998.  She will discuss the difficulty that continued, in fulfilling the attendance functions, due to the physical layout of the school; Dr. Mahoney's unreasonable scoldings about the matter;  and the incident that led to her discharge from HPS employment.

Ms. Cohens will testify to her observations of Dr. Mahoney, including her bursts of anger and her peculiar hostility and harshness towards Ms. Lee.  She will also discuss her observations of Ms. Lee's reputation in the Weaver High community, as she was Ms. Lee's student at one time and lives nearby, and the changes she observed in how others at the school treated Ms. Lee after Dr. Mahoney made her attitude obvious.

4.    Robert Stacy

Mr. Stacy will authenticate and explain the terms of HPS regulations, policies and procedures and the HPSA contract.  He will be asked about the salary and benefits of HPS administrators.

He will also be asked about Ms. Lee's evaluations for the 1997-98 and 1998-99 school years, and any effort HPS made to determine whether they were accurate and in good faith.  He will discuss Ms. Lee's grievances and her harassment and age discrimination complaints, and

what actions HPS took to investigate those complaints.  He will discuss the conclusions he drew, and his discussions about Ms. Lee with Mr. Henry and Mr. Amato.  He will be asked about the requests for further information about his alleged investigation, and the lack of any response.

He will be asked about Ms. Lee's demotion to the position of Middle School Vice Principal in August, 1999.

He will be asked when and how he was notified that the Hartford Public Schools had failed to consider all qualified applicants for the position of Executive Vice Principal of Hartford Public High School for the 2000-2001 school year and what action he took in response.  He will be asked about Norma LaVoie's application and her qualifications, the information he provided about this, and Ms. LaVoie's age.  He will further be asked about any complaints Ms. LaVoie made about harassment or age discrimination.

He will testify that he was aware, in August 1999, that it was unlawful and would violate HPS policy to retaliate against an employee for complaining about harassment or age discrimination.

5.     Ann-Marie DeGraffenreidt

This witness will authenticate and interpret her notes from an interview she conducted with Clara Lee concerning Ms. Lee's complaint of harassment and age discrimination. She will authenticate and explain HPS regulations, policies and procedures and the HPSA contract.  She

will be asked about any further efforts she made to improve the working relationship between Clara Lee and Dr. Mahoney or to determine the reason for any problem between them.

      6.      <u>Anthony Amato</u>

Mr. Amato will be asked to testify about the personnel rules, policies and practices of the Hartford Public Schools; the Collective Bargaining Agreements between the Hartford Public Schools and the Hartford Principals' and Administrators' Association and the terms of the agreements; the procedures for selecting and assigning school and Board administrators; any reason why plaintiff was removed from her position as Executive Vice Principal of Weaver High School; the circumstances of Christine Mahoney's removal from Weaver High School and the reasons for that action; her job assignment after she was removed from Weaver High School; the procedures for selecting and assigning administrators; why he failed to consider all qualified applicants for the position of Executive Vice Principal of Hartford Public High School for the 2000-2001 school year or notify Jose Colon that Clara Lee had applied for the position; and whether she has been or why she has not been considered for any open administrative position since September, 1999. He will testify that he was aware, in August 1999, that it was unlawful and would violate HPS policy to retaliate against an employee for complaining about harassment or age discrimination. He will be asked to describe any effort he made to determine whether Clara Lee's complaints about Dr. Mahoney were valid.